GARRETT S. AYRES and others *vs.* MELTIAH H. LAWRENCE and others, Commissioners of the Town of Milo, and the Sodus Bay, Corning and New York Railroad Company.

Judgments of courts of law are to be reviewed according to the course of the common law, unless a statute otherwise provides. A suit cannot be instituted in equity to set aside a judgment at law, for want of jurisdiction in the court or judge before whom the proceeding was had and the judgment recovered.

Where the statutes under which a county judge assumed to act, in appointing commissioners to bond a town in aid of a railroad, constituted him a judicial tribunal to hear and determine the questions presented by the petition, and provided that his determination should have the same effect as any judgment of a court of record in the State; *Held* that errors in the determination of the county judge in regard to matters which he had the right to determing and adjudicate upon, could not be corrected by the Supreme Court, in an action brought by tax-payers against the commissioners so appointed and the railroad company, to restrain and prevent the issue of the bonds of the town.

Tax-payers of a town, as such, have no right to an injunction to restrain the issue of town bonds by commissioners appointed for that purpose by a county judge, on the ground that such issue, if allowed to be made, will probably result in increasing the taxation of the town, at some future time; when it is not claimed that the plaintiffs have any interest, except such as is common to all the tax-payers of the town.

It does not alter the principle that the action purports to be commenced in behalf of the plaintiff and all other persons, standing in a like situation, who may desire to avail themselves of it.

The general rule is, that for wrongs against the public, whether actually committed, or only threatened, no private action can be maintained.

As an injury affecting a whole community, when committed affords no ground of action to an individual, so neither can an individual maintain an action to restrain its commission when only threatened.

The interests of one or more individuals, as residents and tax-payers, in and of a municipal community, whether city, county or town, do not authorize the maintenance of an action to set aside, or prevent, illegal acts which may result in increased taxation or other burdens and inconveniences, to which all the members of the community are alike subject.

An act likely to produce taxation is not a matter of private or individual concern.

Proceedings under the "bonding acts" have always been reviewed on *certiorari;* and all objections affecting the legality of the proceedings, or the jurisdiction of the county judge, are available on such review. Express authority for thus reviewing them is given by the act of 1871. (*Laws of* 1871, *ch.* 925, § 4.) *Per* TALCOTT, J.

Ayres *v.* Lawrence.

APPEAL, by the defendants, from an order continuing the injunction in this action.

*D. B. Prosser,* for the appellants.

*H. L. Comstock,* for the respondents.

*By the Court,* TALCOTT, J. The order to continue the injunction in this case was made by the county judge of Ontario, upon an order to show cause made by him as a part of the original injunction order made under the 94th rule. Various objections are urged by the counsel for the appellants against the power of the county judge to make this order continuing the injunction. (*See Middletown* v. *Rondout &c. R. R. Co.,* 43 *How.* 144.) But as a much more important question, and one which ought to be definitely settled, is presented, upon the merits of the injunction itself, we deem it best to waive the discussion of the question of practice in this case, being of the opinion that the injunction ought not to be sustained upon the merits, according to the law as laid down by the court of last resort.

This suit is commenced by three individuals, who allege that they are residents and tax-payers of the town of Milo, in the county of Yates, and own taxable property, both real and personal, therein. The cause of action alleged in the complaint is, that the three persons made defendants, as commissioners of the town of Milo, in Yates county, have been appointed such commissioners by the county judge of that county, under what is known as the town bonding act of 1869, and the acts amendatory thereof, upon the petition of certain tax-payers of that town praying that the town shall issue its bonds to the amount of $100,000, and invest the proceeds in the stock of the defendant, The Sodus Bay, Corning and New York Railroad Company. They then set forth the proceedings of the county judge

under the acts aforesaid, and his judgment and determination, whereby he adjudged and determined that the petitioners constituted a majority in number, and owned and represented a majority of the property of the town, and appointing the defendants Lawrence, Schultz and Jones commissioners, to execute the bonds in behalf of the town, and to invest the proceeds in the stock of the company. The validity of these proceedings, by and before the county judge, is attacked upon various grounds, some of which are claimed to go to the jurisdiction of the county judge to act at all in the premises. This suit is commenced to restrain and prevent the issue of the bonds of the town, and the subscription to the stock of the railroad company, and to have the said adjudication of the county judge declared null and void. The plaintiffs allege that the commissioners have not as yet issued any of the bonds, or subscribed for any of the stock, but the plaintiffs are apprehensive they will do so, and that such bonds will ultimately fall into the hands of *bona fide* holders, who will commence actions against the town, and that a large amount of costs and expenses will be incurred by the town in the defense of the actions.

It is not alleged that the investment in the stock of the company would probably be a losing one to the town. It is not alleged that the commissioners, the validity of whose appointment is denied by the complaint, are irresponsible, so that they would be unable to respond for any damages which the town may sustain in consequence of their apprehended unlawful assumption to act as the agents of the town, and to issue bonds in its name. The statutes under which the county judge assumed to act, constitute him a judicial tribunal to hear and determine the questions presented by the petition of the tax-payers, and provide that his determination shall have the same effect as any judgment of a court of record in the State. So far as the complaint alleges errors in the determination of the county

Ayres *v.* Lawrence.

judge, in regard to matters which he has, and of right might determine and adjudicate upon, it is quite clear that this suit cannot be maintained, and the errors, if any, corrected in this collateral action; and we have been referred to no authority maintaining that a suit can be instituted in equity to set aside a judgment at law, for want of jurisdiction in the court or judge before whom the proceeding was had, and the judgment recovered. The court of chancery has never assumed the power to review the judgments of courts of law, and to correct the alleged erroneous decisions of such courts by setting aside the judgment. Nor is it probable that any such assumption would have been tolerated. Judgments of courts of law are to be reviewed according to the course of the common law, unless a statute otherwise provides. Even in matters where the jurisdiction is concurrent, the judgment of a court of law is conclusive upon courts of equity. Courts of equity only interfere with the operation of judgments of courts of law, upon the allegation that the judgment was obtained by fraud, or upon the ground that some fact has arisen, or been discovered, *since the trial at law,* which renders it inequitable to enforce the judgment at law; or upon the ground of equitable rights which were not cognizable in a court of law. And in those cases the court of equity does not attempt to declare the judgment of a court of law to be void, or to set it aside, but acts upon the party through the process of injunction. (*Story's Eq. Jur.* §§ 1570 *to* 1575, *inclusive.*)

But there is another, and a broader view of the case, which we think fatal to the action attempted to be instituted by the plaintiffs. Their argument, to show that they have any cause of action is, of course, the possible contingency that they may be, at some future time, subjected to loss and damage, by reason of the apprehended illegal proceedings of the commissioners, which, it is argued, will perhaps, at some future day, increase the taxation of the

town in order to pay the expense of defending actions to be brought on the illegal bonds. It is not claimed that the plaintiffs have any interest except such as is common to all the tax-payers of the town of Milo. The alleged grievance is that certain apprehended illegal acts will probably result in increasing the taxation of the town at some time hereafter.

Now the general rule is, that for wrongs against the public, whether actually committed or only apprehended, no private action can he maintained. This principle is illustrated by the case of common or public nuisances, which are not actionable by a private person unless some particular damage has resulted to him, which is special to himself, beyond that which is sustained by the community at large. For, as *Blackstone* says, "it would be unreasonable to multiply suits by giving every man a separate right of action for what damnifies him in common only with the rest of his fellow citizens." And as this sort of injury, when actually committed, affords no ground of action to an individual, so neither can he maintain an action to restrain its commission when only threatened. This principle, as applied to tax-payers and residents of municipal communities, seeking to set aside, or prevent acts which have resulted, or may result, in the waste of the property of, or the increase of taxation upon, the community, has been declared and adopted by the court of last resort in this State. In *Ketchum* v. *The City of Buffalo*, (14 *N. Y.* 356,) Justice Wright delivering one of the opinions, to some extent developed these views, and said that the idea that a private action might be maintained for a public wrong was "certainly novel." But as the judgment in that case was affirmed on the merits, and the other members of the court expressed no opinion on the question of the right of the plaintiffs, as tax-payers, to maintain the action, the case is not relied on as authority. Afterwards, in the cases of *Doolittle* v. *The*

Ayres *v.* Lawrence.

*Supervisors of Broome County,* (18 *N. Y.* 155,) and *Roosevelt* v. *Draper,* (23 *id.* 318,) the question was very elaborately considered in the opinions of Judge Denio, which were adopted by the court, and in which the several cases in this State which had given countenance to the doctrine that such actions might be maintained were, so far forth, disapproved and overruled. In the first of these cases, Judge Denio states that the question is one of considerable practical importance, which, if it was then doubtful, "ought to be difinitely settled;" and from an examination of those cases it will appear, as we think, that they were intended by the court of last resort, deliberately, fully and definitively to declare that the interests of one or more individuals as residents and tax-payers, in and of a municipal community, whether city, county or town do not authorize the maintainance of an action to set aside or prevent illegal acts, which may result in increased taxation, or other burdens and inconveniences, to which all members of the community are alike subject, and that an act likely to produce taxation is not a matter of private or individual concern.

The principles enunciated in the cases cited, appear to us to govern this case, and to show clearly that the complaint before us contains no cause of action, and therefore that the injunction ought not to have been continued.

A portion of the opinion in *Doolittle* v. *The Supervisors of Broome County* is as follows: "Where a person wrongfully assumes, under color of an election or appointment, to hold a public office, which, if the pretensions are well founded, would enable him to do acts affecting the persons or property of his fellow citizens, every one, and especially those who would be the subjects of his jurisdiction, has an interest of a certain kind, in divesting him of his assumed authority, and yet nothing is more clear than that a private action for that purpose would not lie." (18 *N. Y.* 159.) The passage quoted, in principle, describes this

case. We are asked, at the suit of the plaintiffs, to declare the appointment of these commissioners void; that their assumption of the office is wrongful, and, as a measure of relief, to enjoin and restrain them from performing the duties of the office, to which, as is claimed, they have been illegally appointed. This cannot, as we understand the law, be done at the suit of private persons. It does not alter the question that the suit purports to be commenced in behalf of the plaintiffs, and all other persons standing in a like situation who may desire to avail themselves of it. The complaints in *Ketchum* v. *The City of Buffalo*, and in *Doolittle* v. *The Supervisors of Broome County*, were of the same character. .

No matter how many persons may join, they still act in their capacity as private persons and individual members of the community. There is much less of apparent hardship in the application of these principles to cases like the present, than in those in which they were applied by the Court of Appeals in the cases cited, and in others which may readily be imagined. The proceedings under the bonding act, have always been reviewed on certiorari, and all objections affecting the legality of the proceedings, or the jurisdiction of the county judge, are available on such review. Express authority for such review is given by the act of 1871. It is declared by section 4 of the act, (*ch.* 925, *Laws of* 1871,) as follows: "Review of proceedings under the acts hereby amended shall be by certiorari." This of itself, perhaps, excludes a review in any other manner; but upon that point we express no definite opinion.

We are not unaware that the courts of some of the other States, and perhaps of the United States, have expressed opinions at variance with those which have been adopted by the Court of Appeals, in the cases referred to. We consider the rule laid down in the latter cases to be the most sound and wholesome, and most in accordance with public convenience and the principles of enlightened juris-

prudence; but whether we acquiesce in the propriety of the rule or not, our duty is to follow the decision of the court of last resort in the State, deliberately made and not hitherto overruled in that court.

What effect the objections to the validity of the appointment of the commissioners might have upon a *quo warranto,* or how far we might review the proceedings before the county judge, if an application were made to us to compel the issue of the bonds, under the 5th section of the act of 1871, we have not considered, and must be regarded as expressing no opinion upon the question of whether the commissioners were rightfully appointed; since the question does not arise; as we hold that the complaint contains no cause of action, assuming all the plaintiff claims on the subject to be correct.

The order continuing the injunction is reversed, with $10 costs of the appeal.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Johnson, Talcott* and *Barker,* Justices.]