CHARLES T. KILBOURNE, Respondent, *v.* SETH B. ALLYN, impleaded, &c., with FREDERICK M. ST. JOHN and another, Commissioners, &c., Appellants.

(GENERAL TERM, THIRD DEPARTMENT, MARCH, 1873.)

An action, on behalf of the plaintiff and other tax-payers, to recover a tax alleged to have been unlawfully collected, and to restrain its disbursement by injunction, none of the other tax-payers appearing to join with him, will be regarded as the personal action of the latter.

Nor will such an action lie on behalf of other tax-payers, entitled to distinct payments out of the whole tax collected ; or to prevent a multiplicity of suits, where the pleadings and evidence fail to indicate any purpose of others to sue, or their dissent from the proposed disbursement of the money.

And where it is neither alleged nor shown that other tax-payers are dissatisfied with the intended disbursement, a judgment directing repayment to them, for which they do not apply or authorize an application, cannot be sustained,

An injunction will not issue to restrain the disbursement of the plaintiff's portion of a tax, to meet interest on town railroad bonds issued without authority, where the commissioners holding the tax are abundantly able to answer for its loss.

IN the year 1868, a majority of the taxable inhabitants of the town of Thompson, in Sullivan county, owning a majority of the taxable property on the assessment roll of their town, not including non-resident lands, consented in writing that the commissioners of their town could bond, on the credit of the town, the sum of $148,000, at a rate of interest not exceeding seven per cent, for a period not exceeding thirty years, and execute under their hands and seals the bonds of the town for the same, to carry into effect the provisions of chapter 553 of the Laws of 1868, providing for the building of a railroad from Monticello, in Sullivan county, through the town of Thompson and another town of that county, to Port Jervis, in Orange county. This consent was afterward filed, as required by the other provisions of the act, and a company, called the Monticello and Port Jervis Railroad Company, was formed for the purpose of constructing and

Kilbourne v. Allyn.

operating a railroad between those points. At the time when the consent was signed by the tax-payers this company was not formed. And neither that nor any other company was named in the consent, which it was proposed to aid by issuing the bonds of the town. But after the company was organized the commissioners did issue the bonds to the amount of $148,000, and exchanged them for the stock of the railroad company. And since that time a portion of them at least have passed into the hands of innocent purchasers for value.

The company constructed the railroad, and is now operating and maintaining it between the points already mentioned. And the town has raised and paid one year's interest upon the bonds so issued by its commissioners.

In December, 1870, the commissioners of the town made a report to the board of supervisors of the county, under the provisions of the act of 1868, stating the amount that would become necessary for the payment of one and a half year's interest upon the bonds of the town. And the board directed the sum of $15,721.30 to be levied on the town of Thompson to pay the same. This amount included three semi-annual installments of interest, maturing on the bonds on the first day of September, 1870, and the first days of March and September, 1871. The amount was included in the assessment roll of the town, and a warrant issued by the board to the collector of the town to collect the same from the tax-payers and property of the town. The collector proceeded under his warrant to collect the tax. And out of the moneys collected, he afterward paid over to the commissioners sufficient to pay the interest over-due on the bonds, and one of the commissioners paid the same. The residue of the moneys has since been collected and paid over by the collector, and has remained on deposit to the credit of Allyn, one of the commissioners. During the progress of its collection this action was commenced by the plaintiff, for himself, and for the benefit of all other tax-payers of the town, against the commissioners, to restrain them from paying over the moneys

so collected in payment of the interest on the town bonds, and for its repayment to the plaintiff and the other tax-payers of the town. And a temporary injunction was issued in the suit, restraining the commissioners from paying the money in extinguishment of the interest accruing on the bonds.

Seth B. Allyn, the commissioner to whose credit the moneys collected stood on deposit, answered the complaint; the other two made default. The issue was tried before a referee, who reported in favor of the plaintiff, and directed a judgment making the injunction perpetual, and directing the commissioners to pay over the moneys to the treasurer of the county. After the payment of the costs of the parties to the action, he was to pay the residue to the tax-payers from whom it had been collected, or their legal representatives, in proportion to the amounts collected respectively from them. Judgment was entered upon the report, and the defendant Allyn then appealed to this court.

*C. V. R. Ludington* for the appellant.

*T. F. Bush* for the respondent.

Present—MILLER, P. J., DANFORTH and DANIELS, JJ.

DANIELS, J. This action appears to have been brought by the plaintiff, on the ground that the commissioners of the town were unauthorized under the statute to issue the bonds, because the consent of the tax-payers contained the name of no railroad company in whose stock the proceeds of the bonds should be invested by them. And the further ground that the bonds themselves were transferred directly to the railroad company, formed after the consent was obtained, instead of their proceeds, as the statute in terms required. It was in the consideration of these objections, and of the rights of *bona fide* holders of bonds issued under such circumstances, that the learned referee wrote his able and inter-

Kilbourne *v.* Allyn.

esting opinion, through which he reached the conclusion that
the plaintiff was entitled to judgment for the relief men-
tioned in his complaint.

The defendant excepted to the conclusions and directions
of the referee by which he held that the injunction, restrain-
ing the application of the moneys collected from the pay-
ment of the interest accruing on the bonds of the town,
should be made perpetual, and that judgment should be
entered for that purpose, and for the distribution of such
moneys by the treasurer of the county among the tax-payers
of the town and their representatives in proportion to the
amounts collected of them respectively. These exceptions
are probably sufficient to present the point of the plaintiff's
ability to maintain this action. For if he has shown no right
to that relief, the judgment recovered by him should not
have been ordered in his favor. His right, in that respect,
must, therefore, be considered before the grounds on which
the referee has placed the recovery can properly form the
subject of examination.

Although he professedly brought the action for the benefit
of himself and the other tax-payers of his town, no others
appear to have joined him in the undertaking. And they
probably could not have lawfully done so, since the interests
of each one of the tax-payers in the money forming the sub-
ject of the controversy were distinct, personal, and peculiar
to himself. (*Magee* v. *Cutler*, 43 Barb., 239, 260.) For both
reasons the case must be considered and examined as the per-
sonal action of the plaintiff himself, affecting his rights solely,
so far as they might be injured or prejudiced by the future
action of the commissioners. This view is further fortified
by the form which the plaintiff gave to his complaint. For
while he alleged that a multitude of suits would be required
to recover back the money if the commissioners were per-
mitted to pay the interest upon the bonds with it, and the
questions made were of common interest to all the tax-payers
of the town, he did not show that there was the least danger
of any such suits, or that any tax-payer beyond himself

threatened or contemplated commencing any suit. So far as anything in the complaint, or by the evidence given on the trial of the action, was made to appear, it showed nothing from which the inference could be drawn that any other tax-payer of the town in the least degree dissented from the payment of the money for the extinguishment of the interest arising upon the town bonds. For that reason, even if such an action could be properly instituted to avoid a multitude of individual suits, the fact itself forms no part of the plaintiff's case. In order to maintain an action in equity for an injunction on that ground, it certainly should be made to appear by the pleadings and the proofs that other persons either threatened or designed to institute such suits. (*Magee* v. *Cutler, supra; Heywood* v. *City of Buffalo,* 14 N. Y., 534.)

As long as it was neither alleged nor shown that other tax-payers were dissatisfied with the payment of the interest upon the town bonds, the judgment providing for their reimbursement can in no view of the case be sustained. They applied for no such relief as was given them by the referee's direction, that the taxes collected from them to pay the interest on the bonds should be returned to them or their representatives, and conferred no authority upon the plaintiff to make such an application in their behalf.

The plaintiff alleged in his complaint that the defendants were good and responsible for several times the amount of the moneys remaining in their hands. And as that was the case, there was no foundation on which the action could be maintained for an injunction to prevent irreparable injury to his rights. The proportion of the tax paid by him under the warrant issued to the collector, applicable to the interest accruing on the bonds received by the commissioner, was thirty-four dollars and ninety-nine cents. And that could not well be endangered, even if an injunction was not issued for its protection, as long as the persons who had received it and were expected to make an unlawful use of it were responsible, as the plaintiff averred that they were.

Kilbourne *v.* Allyn.

In fact, no injury was shown, either by the complaint or the evidence, which could possibly happen to the plaintiff or his property by the action it was apprehended the commissioners were about taking in the appropriation of the moneys one of their number had received, beyond the payment of the small sum claimed by him, toward the satisfaction of the interest maturing on the bonds. And that was clearly insufficient to constitute a ground of action for an injunction restraining such payment. For if they were not legally protected in such an appropriation of the money, they were abundantly able to answer for all its pecuniary consequences. " A party who brings an equitable action must maintain it upon some equitable ground; and if his cause of action is of a legal and not an equitable nature, he must bring a legal action or pursue a legal remedy. Where a matter is clearly a *prima facie* one of legal cognizance, a party must, in order to maintain an equitable action upon it, state clearly facts sufficient to entitle him to equitable relief, and to show that a perfect remedy cannot be obtained at law." (*Heywood* v. *City of Buffalo,* 14 N. Y., 534, 540, 541.) That, the plaintiff in this case failed to do by anything either alleged or proved.

The fact that he was a tax-payer of the town, and that a tax had been collected from him without the authority of law, and there was danger that the amount would be devoted to an unlawful purpose, were not sufficient to enable him to maintain an action for an injunction. They failed to present a case within the rule just quoted, and similar circumstances have often been held to form no equitable cause of action. (*Magee* v. *Cutler, supra ; Doolittle* v. *Supervisors of Broome County,* 18 N. Y., 155 ; *Susquehanna Bk.* v. *Same,* 25 id., 312; *Mutual Benefit Life Ins. Co.* v. *Supervisors of New York,* 32 How., 359 ; *Hasbrouck* v. *Kingston Board of Health,* 3 Keyes, 480 ; and *Ayres* v. *Lawrence and others,* 63 Barb., 454.)

If the plaintiff is right in maintaining that the bonds were issued without authority, and no debt has been created by

them against the town in which he is a tax-payer, then the persons through whose agency his property may be seized and appropriated for their payment, or the payment of the interest accruing upon them, will be involved by that act in the commission of a wrong, and possibly, for that reason, legally liable for its value. (*Mygatt* v. *Washburn*, 15 N. Y., 316; *Bennett* v. *City of Buffalo*, 17 id., 383.)

So also he may maintain an action for money had and received against the functionary, without right, receiving and appropriating the proceeds of property unlawfully taken from him, and converted into money for the purpose of making such payment with it. (*Chapman* v. *City of Brooklyn*, 40 N. Y., 372; *Newman* v. *Supervisors of Livingston*, 45 id., 676; *Bank of Commonwealth* v. *Mayor of New York*, 43 id., 184.)

And without waiting until his property has been seized for the collection of what he may deem an unfounded demand, he may secure a review of the proceedings proposed to be taken for its appropriation by means of the writ of *certiorari*. (*People* v. *Com'rs, &c.*, 23 N. Y., 192; *People* v. *Board of Assessors of Albany*, 40 id., 154.)

If the plaintiff has a valid right to resist the payment of taxes imposed for the purpose of satisfying the debt mentioned in the bonds, the law affords him ample means for its protection, and for redress after its invasion, without the aid of either a temporary or perpetual injunction. The case stated and proved by him did not entitle him to redress by means of that remedy. For that reason the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

DANFORTH, J., dissents.

Judgment reversed.