## TILTON ET AL. *v.* COFIELD ET AL.

1. Where no local statute or rule of local law is involved, the power to amend is the same in attachment suits as in others.
2. A court of equity cannot act as a court of review, and correct errors of a court of law, nor can it, in the absence of fraud, collaterally question the conclusiveness of a judgment at law.
3. A purchaser of property *pendente lite* is as conclusively bound by the results of the litigation as if he had from the outset been a party thereto.

APPEAL from the Supreme Court of the Territory of Colorado.

Argued by *Mr. George T. Curtis* and *Mr. George H. Williams* for the appellants, and submitted on printed arguments by *Mr. Amos Steck* for the appellees.

MR. JUSTICE SWAYNE delivered the opinion of the court.

On the 28th of August, 1865, the appellants sued out of the District Court of Arapaho County, Col., a writ of attachment against the property of Judson H. Dudley and Thomas P. Ames, for the sum of $2,591.44. The indebtedness was stated in the affidavit to be upon an account for goods sold and delivered. On the same day, the writ was served by attaching the real estate in controversy. A declaration was duly filed. The damages were laid at $3,000. On the 27th of January, 1865, judgment was rendered for $2,591.44, and costs. This judgment was reversed by the Supreme Court of the Territory on the 10th

of February, 1868. On the 9th of March, 1867, Dudley, by Charles G. Cheever, his attorney, conveyed a large amount of property, including all that attached under the writ of appellants, to David Moffit, except two lots, which Dudley himself conveyed to the Hallecks. The other appellees derive their title from Moffit. The power of attorney to Cheever was so far defective, that only an equity was vested in Moffit, and nothing more passed to those holding under him. On the 12th of September, 1868, the Tiltons, by leave of the court, filed in the attachment suit an amended affidavit and declaration, whereby were included, as a demand in favor of the plaintiffs, a promissory note executed to them by Dudley and Ames, dated Sept. 19, 1864, for $2,592.90, and bearing interest at the rate of two per cent per month, until paid. This note was given to balance the account set forth in the prior proceedings, and represented the same debt. On the 1st of November, 1869, judgment was rendered against Dudley by confession for $5,652.80, and an order was made for the sale of the property attached. Pursuant to this order, the sheriff sold the attached property at public vendue to the appellants for the sum of $6,345.25, and on the 13th of December, 1871, executed a deed to them.

The appellees filed a bill and supplemental bill, seeking to vacate the sale and annul the conveyance by the sheriff. The court decreed that the order of sale and the proceedings thereon touching the premises were nullities; that the sheriff's deed to the appellants was void; that the property should be for ever discharged from the lien of the judgment; and that the Tiltons should be perpetually enjoined from intermeddling with or selling it.

The record discloses no ground for any imputation of fraud against the appellants. The good faith of the account, the validity of the note, and the propriety of the amount for which the judgment was recovered, as between the parties to attachment proceedings, are not controverted. The original demand was an honest one, arising in the regular course of commercial dealings. The appellants are *bona fide* creditors, and have simply pursued the appropriate means for the collection of what was owing to them. Fraud is not an element in the contro-

versy.    The case requires no further consideration in this aspect.

Nor is it denied that the court by which the judgment in the attachment was rendered had full jurisdiction.

In *Voorhes* v. *The Bank of the United States*, 10 Pet. 449, the defendant in an action of ejectment was the defendant in error.    He claimed title from certain proceedings in attachment in Ohio.    The following objections were taken to them: 1.  No affidavit, as required by the statute, was found filed with the clerk; and the law provided, that, if this were not done, the writ should be quashed on motion.    2.  Three months' notice of the attachment was to be given in a newspaper, and fifteen days' notice was to be given by the auditors.    It did not appear that either had been done.    3.  The defendant was to be called three times, and his defaults recorded.    No such record appeared to have been made.    4.  The auditors were not to sell until after twelve months.    It did not appear when the sale was made. 5.  The return showed a sale to Foster and Woodward; the deed was made to Stanley, and no connection between them appeared in the record.

The court there being competent to take jurisdiction, and having acquired jurisdiction by the seizure of the property, this court held that all its acts and orders made during the progress of the case were beyond the reach of collateral inquiry, and could be assailed only in a direct proceeding had for that purpose before a competent tribunal.

In *Grignon's Lessee* v. *Astor*, 2 How. 341, the controversy grew out of a license given by the County Court to sell the property of a deceased person.    This court applied the same principles.- It was said, —

"The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and, whether they existed or not, is wholly immaterial, if no appeal is taken.    The rule is the same, whether the law gives an appeal or not.    If none is given from the decree, it is conclusive on all whom it concerns. . . . A purchaser under it is not bound to look beyond the decree.    If there is error in it of the most palpable kind; if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave

them the power to hear and determine the case before them, — the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error."

The lines which separate what is void from what is erroneous is clearly drawn in the former case.

The eighth section of the local statute under which the appellants' suit was instituted, declares, —

" No writ of attachment shall be quashed nor the property taken thereon restored, any garnishee discharged, nor any bond by him given cancelled, nor any rule entered against the sheriff discharged on account of any insufficiency of the original affidavit, writ of attachment, or attachment bond, if 'the plaintiff, or some credible person for him, shall cause a legal and sufficient affidavit or attachment bond to be filed or the writ to be amended in such time or manner as the court in their discretion shall direct ; and in that case the cause shall proceed as if such proceedings had been originally sufficient."

The amendments here in question were all within the equity, if not the letter, of this section. The act provides for the amendment of the writ. No such amendment was made. The grasp of the process was confined to the property originally attached. No attempt was made to reach any other. The description of the cause of action was changed, but in the view of equity, and in point of fact, it was substantially the same with that originally described. Allowing amendments is incidental to the exercise of all judicial power, and is indispensable to the ends of justice. Usually, to permit or refuse, rests in the discretion of the court ; and the result in either case is not assignable for error. This subject was fully examined in *Tiernan's Executors* v. *Woodruff,* 5 McLean, 135. It is there shown, that both in the English and American courts amendments have been allowed in well-considered cases, for the purpose of introducing into the suit a new and independent cause of action. This was going further than the court went in permitting the amendments made by the appellants. It has also been held, upon full consideration, that " courts have the power to amend their process and records, notwithstanding such amendment may affect existing rights." *Greene* v. *Cole,* 13 Ired. Law, 425.

Where no local statute or rule of local law is involved, the power to amend is the same in attachment suits as in others. Cases of this kind, too numerous to be cited, may be found, in which amendments in the most important particulars were permitted to be made. We refer to some of these adjudications: *McKnight* v. *Strong*, 25 Ark. 212; *Talcott* v. *Rosenbury*, 8 Abb. Pr. N. S. 287; *Vanderheyden* v. *Gary*, 3 How. Pr. 367; *Tully* v. *Herrin*, 44 Miss. 627; *Wadsworth* v. *Cheeney*, 13 Iowa, 576; *Jackson* v. *Stanley*, 2 Ala. 326; *Winkle* v. *Stevens*, 9 Iowa, 264; *Wood* v. *Squires*, 28 Mo. 397; *Scott* v. *Macy*, 3 Ala. 250; *Johnson* v. *Huntington*, 13 Conn. 47.

If the amendments objected to by the appellees were improperly allowed, it was at most only an error, and in no wise affected the judgment while unreversed, or the validity of the order of sale, or of the sale and conveyance made under them, to the appellants. They have a perfect legal title, unless it is overcome by the case made in the record by the complainants.

We have already held that there was no fraud on the part of the Tiltons. A case more free from that vice can hardly be imagined. This takes away the jurisdictional foundation of the complainants' case. In the absence of fraud, a court of equity cannot collaterally question the conclusiveness of a judgment at law.

Nor can a court of equity turn itself into a court of review, and correct the errors of a court of law. This is alien to its jurisdiction, and beyond the sphere of its power and duties. *Cameron* v. *Bell*, 2 Dana, 328; *De Rymer* v. *Cantellow*, 2 I. C. 85; *Shollenkirk* v. *Wheeler*, 3 id. 275. As well might a court of law undertake to perform a like function with respect to a court of equity. Each is independent of the other. They act on different principles, and, except where some recognized ground of equity jurisdiction is concerned, are each alike bound to recognize the validity and conclusiveness of the record of what the other has done. Equity in such cases does not contradict, but supplements. It does in this way what right and justice require, and what, from the inflexibility of the principles upon which a court of law proceeds, it could not do. Any thing touching the amendments out of which this controversy

has grown were no more open to inquiry in a court of equity than in another and independent legal forum.

The decree below in this respect involved a usurpation and the invasion of a domain, upon which the court had no right to enter. There being no fraud, neither the judgment nor any thing which preceded or followed it could be properly made the subject of review by that tribunal.

The authorities to which we have referred are conclusive upon the subject.

There is another objection to the case of the appellees, which must not be overlooked. They are not subsequent attaching creditors, nor creditors at all; they are purchasers *lite pendente.* The law is, that he who intermeddles with property in litigation does it at his peril, and is as conclusively bound by the results of the litigation, whatever they may be, as if he had been a party to it from the outset. *Inloe's Lessee* v. *Harvey,* 11 Md. 524; *Salsbury* v. *Benton,* 7 Lans. 352; *Harrington* v. *Slade,* 19 Barb. S. C. 162; 1 Story's Eq., sect. 406. The appellees voluntarily took the position they occupy. They chose to buy a large amount of property, including that in controversy, from the fugitive debtor. This was done after the latter had been seized under the writ of attachment, and while the suit in which it was issued was still pending. They took the title subject to the contingencies of the amendments that were made, and of every thing else, not *coram non judice,* the court might see fit to do in the case. The attachment might be discharged, or the judgment might be larger than was then anticipated. They took the chances, and must abide the result. Having obtruded themselves upon the property attached, they insist that their purchase narrowed the rights of the plaintiffs and circumscribed the jurisdiction of the court. Such is not the law. After their purchase, the court, the parties, and the *res,* stood in all respects as they stood before; and the judgment, sale, and conveyance have exactly the same effect as if the appellees and the facts upon which they rely had no existence.

In some of the States, peculiar systems of jurisprudence, with respect to suits in attachment, have grown up, and every thing in that connection is held to be *stricti juris.* In other States, more liberal rules prevail. We do not mean to contravene the

former. In cases arising in such States, we should be bound to apply the local law. In the Territory where this controversy arose, it does not appear that any system touching the subject is yet established. We have, therefore, felt at liberty to apply general principles to the case in hand.

*Decree reversed, and case remanded with directions to dismiss the bill.*