BELMONT NAIL Co. *v.* COLUMBIA IRON & STEEL Co. *et al.*

(*Circuit Court, W. D. Pennsylvania.* April 6, 1891.)

RECEIVER—CORPORATIONS—ASSIGNMENT FOR BENEFIT OF CREDITORS.

An assignment for the benefit of creditors, made by a corporation after service of process on it in a suit by a creditor for the appointment of a receiver, does not deprive the court of jurisdiction to appoint such receiver.

In Equity. On motion for appointment of a receiver.

*P. C. Knox*, for complainant.

*Geo. C. Wilson* and *C. A. O'Brien*, for defendants.

REED, J. The complainant has filed the bill in this case as a corporation of the state of West Virginia against the Columbia Iron & Steel Company, a corporation of the state of Pennsylvania, joining as a co-defendant the trustee named in the general mortgage of the defendant company, the trustee also being a corporation of the state of Pennsylvania. The bill alleges the insolvency of the defendant company; the improper disposition of its assets by its officers, since its insolvency, by the payments and preference of certain of its creditors; the pendency of suits and attachments against the company; and that it is disposing of certain of its assets by shipping them to foreign states, and converting them by sale into book-accounts, which are liable to attachment by the creditors of the defendant; that the complainant is a creditor of the defendant company to a large amount, a portion of the indebtedness held by it having matured, and payment refused by the company; that the company has a large amount of assets, consisting of lands, factories, buildings, machinery, rolls, stock on hand, material unfinished and partly finished, book-accounts, and bills receivable; that the interest on its mortgage bonds will mature April 1, 1891, and that defendant company has no funds on hand to pay the same, and by the terms of the mortgage the mortgage debt may become due if the interest is not paid; that there is danger of the assets of the company being dissipated by sales on executions and otherwise; that said assets should be preserved and ratably distributed among all the creditors of the defendant company, in proportion to the amounts of their several debts, either due or to become due. The bill prays that the assets be decreed to be a trust fund for the benefit of all the creditors of the company; that an account be taken of all its debts; that its assets may be applied in payment of the indebtedness of the corporation in proportion to the whole thereof; that the defendant company be restrained by injunction from disposing of its assets; that a receiver be appointed to take and hold the said assets of the company. This bill was filed March 26, 1891, and the return of the marshal shows the subpoena to have been served the same day on C. Yeager, president of the defendant company. On April 2, 1891, a notice was served by the solicitor for the complainant upon C. Yeager, president, notifying him that an application would be made on Saturday, April 4, 1891, for the appointment of a receiver, and for an injunction as prayed for in the bill.

At the hearing, on April 4th, affidavits were read by the solicitor for the complainant in support of the averments of the bill. These affidavits show the insolvency of the company; that a number of suits are pending against it for large amounts, some of which have been overdue for several weeks; and that a portion of the claim of the complainant is due and unpaid, although its book-keeper made personal application at the office of the defendant for its payment; but was there informed that the company had no funds or other assets with which to pay the claim. Affidavits were also presented of other creditors whose claims are unpaid. The affidavit of Mr. Boggs, to which I will refer again, establishes the fact of insolvency beyond question. The defendant company presented no affidavits, at the hearing on the motion, to controvert either the allegations of the bill or of the affidavits read in its support, and the statements of fact presented by complainants are uncontradicted. The case, as made out by the bill and affidavits, (other than that of Mr. Boggs,) would, in my judgment, be a proper one for the appointment of a receiver.

The affidavit of R. H. Boggs, however, raises an unusual question, which must be considered. It sets forth that he is a member of the board of directors of the defendant company; that a meeting of the board was held on Friday, April 3, 1891, (the day following the service of the notice of the hearing, and the day previous to the hearing;) that at said meeting it was resolved that the defendant company was insolvent, and the question of the application for a receiver in the present case was taken up and discussed, and it was finally decided by the majority of the board of directors, (the affiant and Mr. Buhl, another director, voting against the same,) that, for the purpose of preventing a receiver being appointed in this case by the court, an assignment be made to Charles A. O'Brien, which was accordingly done, against the protest of Messrs. Boggs and Buhl, who notified the directors that they had been advised by counsel that the United States court had obtained jurisdiction of the subject-matter and the parties, and such action on the part of the company was improper. At the hearing of the motion counsel for the defendant company appeared, stating that such an assignment to Mr. O'Brien had been made in pursuance of the action of the board of directors, which assignment was made in the afternoon of April 3, 1891, and that the assignment was to Mr. O'Brien in trust for the benefit of creditors, and conveyed to him all the property of the company for that purpose. Mr. O'Brien, it was stated by counsel, was, up to the time of his appointment as assignee, the attorney of the company, and was present during the deliberations of the board detailed in Mr. Boggs' affidavit. It was claimed by defendants' counsel that, under this state of facts, the complainant's application for a receiver must be refused.

It is well settled that the assets of a private corporation constitute a trust fund for the payment of its debts, and that, in the event of insolvency, creditors may proceed in a court of equity to have such trust fund administered and applied in equality to the payment of the claims of the creditors of the corporation. "The assets of such a corporation are

a fund for the payment of its debts. If they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process. If they have been distributed among stockholders, or gone into the hands of others than *bona fide* creditors or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust in favor of creditors, which a court of equity will enforce, and compel the application of the property to the satisfaction of their debts." *Curran* v. *Arkansas*, 15 How. 307. "Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosesoever possession it may be transferred, unless it has passed into the hands of a *bona fide* purchaser." *Railroad Co.* v. *Howard*, 7 Wall. 409. The right of the complainant, upon the insolvency of the defendant company, to file its bill for the benefit of itself and such other creditors as might join, for the purpose of obtaining the aid of the court sitting in equity to apply the assets of the corporation to the payment of its debts, being unquestioned, it necessarily follows that, upon the service of the subpœna upon the defendant company, the jurisdiction of this court was complete, both as to the parties and the subject-matter. This, as the record shows, was on the 26th day of March, 1891. Hence the relation of the parties and the *status* of the property in question must be considered as of that date. No subsequent action of one of the parties could affect the rights of the other party. Any disposition by the defendant company of its assets (except the sale of personal property or transfer of negotiable securities to *bona fide* purchasers) would be invalid, as against the rights of the other party. Particularly would this be the case where the transfer was made to the attorney of the company, without consideration, and for the express purpose of defeating the complainant in this proceeding, even though the transfer was in trust to pay creditors out of the assets. The complainant has a right to have these assets applied to that purpose, under the direction of the court whose aid it has invoked, and cannot be compelled to await and accept a distribution and payment by the chosen agent of the debtor, in a mode which the debtor sees fit to adopt, without consultation with the creditor. In the case of *Dovey's Appeal*, 97 Pa. St. 160, the court say:

"It [*lis pendens*] affects a purchaser, not because it amounts to notice, but because the law does not allow litigant parties to give to others, pending the litigation, rights to the property in dispute, so as to prejudice the other party. * * * This is a rule of public policy, and the object of it is to prevent the parties from making a conveyance *pendente lite* of the property or thing which is the subject matter of the controversy, and thus to defeat the execution of the decree of the court. The effect of it is to impose a disability to convey from the time of the service of the subpœna upon the defendant. The court, in the execution of its decree, pays no regard even to a *bona fide* purchaser. In other words, no change of ownership during a suit will prevent the execution of a decree, as it would have been executed had there been no change."

In the case of *Tilton* v. *Cofield*, 93 U. S. 168, the supreme court say:

"The law is that he who intermeddles with property in litigation does it at his peril, and is as conclusively bound by the results of the litigation, whatever they may be, as if he had been a party to it from the outset."

In the case of *Mellen* v. *Iron-Works*, 131 U. S. 371, 9 Sup. Ct. Rep. 781, the court say:

"Purchasers of property involved in a pending suit may be admitted as parties, in the discretion of the court; but they cannot demand, as of absolute right, to be made parties, nor can they complain if they are compelled to abide by whatever decree the court may render within the limits of its power, in respect to the interest their vendor had in the property purchased by them *pendente lite.* As said in *Bishop of Winchester* v. *Paine*, [11 Ves. 194, 197,] the litigating parties are exempted from the necessity of taking any notice of a title so acquired. As to them it is as if no such title existed."

To the same effect is the ruling in the case of *Union Trust Co.* v. *Southern Inland Nav. & Imp. Co.*, 130 U. S. 565, 9 Sup. Ct. Rep. 606. In the case of *Eyster* v. *Gaff*, 91 U. S. 521, the court held that, where an assignee in bankruptcy of a mortgagor is appointed, during the pendency of proceedings in a state court for the foreclosure and sale of the mortgaged premises, he stands as any other purchaser would stand on whom the title had fallen after the commencement of the suit. The ruling and opinion in the case of *Buck* v. *Insurance Co.*, 4 Fed. Rep. 849, are applicable to the present case. In that case the board of directors of the company, without any authority from its stockholders, conveyed its property to its vice-president in trust to pay its debts. Subsequently a bill was filed in the circuit court for the eastern district of Virginia by a non-resident creditor, setting up the insolvency of the company, and the execution of the deed of trust, and praying that the said deed be declared void, and a receiver appointed to administer the assets and pay the debts of the company upon an account taken under the direction of the court. Judge HUGHES said:

"The defendant company is admittedly insolvent. Being a life insurance company, insolvency, and an assignment of all its effects in liquidation, is final and irretrievable death to its corporate existence. It is incapable of taking care of its own effects, and has itself confessed the fact by assigning them to a trustee. * * * It is useless to contend that courts should observe extreme caution in entering upon the appointment of receivers. Such caution is only necessary where the company's insolvency is denied, where the company is in the full exercise of its franchises and use of its property, and where the act of the court would abruptly and harshly arrest it in its career of action, and wrest its property from its use and control. It is true that in such a case a court should consider well the consequences of its action, and adopt the extreme recourse only when the facts of the case most clearly justify the measure. But this defendant company is already extinct, its franchises are already forfeited and abandoned, its property already put by its own act out of its own use and possession, and committed to liquidation. Having thus made a case for a receiver, and actually anticipated a court in appointing one, this court is relieved from the painful inquiries and delicate responsibility usually devolved upon courts in passing upon applications for receivers; and therefore I am confronted with but a single question, which is whether or not this court will allow the defendant company to appoint its receiver for it."

In the present case the defendant is admittedly insolvent, has under-taken in consequence of such insolvency to provide for liquidation, and had anticipated the court in the appointment of a trustee for that purpose; but, jurisdiction in this proceeding having vested before such appointment, the complainant has the right to say whether it acquiesces in such liquidation by the company's trustee. As it objects, and insists upon its rights as they existed upon the service of the subpoena upon the defendant company, and as the facts justify the appointment of a receiver, I am of the opinion that the receiver should be appointed, regardless of the assignment by the officers of the company of its assets to Mr. O'Brien. Let an order be drawn accordingly.