## Case No. 11,580.

### In re RATHBONE.

[2 Ben. 138; 15 Pittsb. Law J. 233; 1 N. B. R. 294 (Quarto, 50); 25 Leg. Int. 60.] [1]

District Court, S. D. New York. Feb., 1868.

BANKRUPTCY—SPECIFICATIONS OF OPPOSITION TO DISCHARGE — FRAUDULENTLY CONTRACTED DEBT—FALSE SWEARING.

1. Specifications of opposition to a discharge, under section thirty-one of the bankruptcy act [of 1867 (14 Stat. 532)], and general order No. 24, must be as specific as the grounds for avoiding a discharge after it is granted, required by section thirty-four of the act. The allegations must be allegations of fact, and must be distinct, precise, and specific, so as to advise the bankrupt what facts he must be prepared to meet and resist.

[Quoted in Re Burk, Case No. 2,156. Cited in Re Jacobs, Id. 7,160; Re Graves, 24 Fed. 552; Re Carrier, 47 Fed. 439.]

2. It is no ground of objection to a discharge that a debt was created through the false and fraudulent representations of the bankrupt.

3. An allegation that a statement in one of the bankrupt's schedules was false is insufficient. Such a statement must be willfully false to afford ground of objection.

4. An allegation that the bankrupt falsely testified as to a certain matter on his examination is insufficient, if it does not aver that the false swearing was willful, and that the fact was a material one.

5. An allegation that the bankrupt "is entitled" to certain real estate is a sufficient specification to show that the bankrupt has been guilty, under section twenty-nine, of negligence in delivering to the assignee property belonging to him.

6. Certain specifications in this case were held too vague and general.

---

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 1 N. B. R. 294 (Quarto, 50), and 25 Leg. Int. 60, contain only partial reports.]

[In the matter of Robert C. Rathbone, a bankrupt.]

D. G. Barnitz, for bankrupt.
H. P. Herdman, for creditors.

BLATCHFORD, District Judge. A creditor of the bankrupt has filed what purport to be five specifications of the grounds of his opposition to the discharge of the bankrupt. They are in substance as follows:

1. That the bankrupt has not set forth in his petition and schedules all his property;

2. That, in his examination on oath before the register, he has not, in some material facts, stated the truth, respecting his property, which should go to his assignee in bankruptcy;

3. That he has been guilty of fraud in delivering to such assignee the property belonging to him;

4. That he has been guilty of fraud in covering, concealing, and distributing his property;

5. That he has been guilty of fraud generally, and of false representations concerning his property, and in its distribution among his creditors, under an assignment made by him in 1854, and of fraud and collusion with the assignee under that assignment; and that, from the time he made that assignment until now, he has been guilty of fraudulently conducting his business through collusive arrangements with others, who keep the bankrupt as a clerk, but really divide with him the profits of the business, and that the bankrupt, through his wife and brother and others to the creditor unknown, has concealed his property from the date of that assignment till now, and that they hold the same for his use and benefit, such conduct being for the purpose of defrauding the creditors named in his schedule annexed to his petition.

These specifications are all of them too vague and general to be triable. They are not at all specific. They point to nothing with any reasonable definiteness. They aver nothing on which an issue can be raised. They do not notify the bankrupt what specific and particular allegations of fact the creditor intends to prove. The only one of them which approaches the character of a proper specification, is that part of the fifth specification which states that the bankrupt is ostensibly a clerk but really a partner in some business; but this does not state what the business is, or who the copartners are. The specifications of the grounds of opposition to a discharge must, under section thirty-one of the act, and general order No. 24, be as specific as the specifications of the grounds for avoiding a discharge after it is granted, required by section thirty-four of the act. The allegations must be allegations of fact, and must be distinct, precise, and specific, and must not be allegations merely in the language of section twenty-nine of the act,

or allegations so general as really not to advise the bankrupt what facts he must be prepared to meet and resist.

The fourth section of the bankruptcy act of 1841 [5 Stat. 443] provided that the discharge, when duly granted, should be conclusive evidence of itself in favor of the bankrupt, unless it should be impeached for some fraud or willful concealment by him of his property, contrary to the act, "on prior reasonable notice, specifying in writing such fraud or concealment." In Brereton v. Hall, 1 Denio, 75, a discharge in bankruptcy was pleaded. To this plea there was a replication, generally alleging that the defendant was guilty of fraud, and of willful concealment of his property, and purporting to set forth three specifications. The first specification related to transfers of property for the purpose of preferring certain creditors, but did not describe the property, either as to kind or quantity, or state to whom it was conveyed, or what creditors were preferred. In respect to this specification, the court said: "The specification is nearly in the words of the statute, and is quite too general to inform the defendant what charge he must be prepared to repel on the trial. If the plaintiff knows that there were any unlawful preferences in contemplation of bankruptcy, he can specify what in particular they were. If he has no such knowledge, this is, then, a mere fishing suit, which deserves no encouragement." The second specification named certain property as having been conveyed in fraud of the act, but did not name the persons, or any of them, to whom it was conveyed. The court held that this should have been done, and said: "The defendant should be fairly apprised of the proof which he may expect to meet on the trial. If the property was sold by retail or at auction, in small quantities, it would not be necessary to give the names of all the purchasers, and possibly the specification would be good without giving any of them. But then the pleading should state the necessity for omitting to give the names." The third specification alleged that the defendant had concealed property of considerable value. This was held bad, because it did not describe the property as to kind or quantity, and did not state how or in what manner the concealment was effected, or when or in what stage of the proceedings it occurred. The same doctrine substantially was held in Chadwick v. Starrett, 27 Me. 138, and is approved by this court.

After the foregoing decision was rendered, the creditors, by leave of the court, filed ten additional specifications of objection. The first six are sufficiently stated in the following decision. The other specifications were as follows:

7th. That said bankrupt's statement in Schedule B, No. 3, annexed to said petition, is wholly false, and so disclosed by him to be on his examination before the register—the facts being, that, at the time he swore to said schedule, he was, and now is, the owner of a life insurance policy on his own life, &c. (setting forth the particulars thereof).

8th. That the business of Rathbone Brothers & Co., brokers, &c., in Broadway, was started and built up by said bankrupt, and has so continued under his supervision to the present time, the yearly net profits whereof is now about $35,000 per year. That said bankrupt professes to receive only about one-tenth of the annual profits of said business, as a clerk, and in lieu of salary, while his said wife, represents by purchase, or pretended purchase, for $4,000, a one-fifth interest in said business, all of which business, except those portions actually and not fraudulently sold to others, are assets in the hands of said bankrupt, and should inure to the benefit of his creditors.

9th. That much of the indebtedness of said bankrupt set forth in the schedule, annexed to his petition as contracted by the firm, was his own individual indebtedness, and was taken and used for his own personal benefit.

10th. That from and including the contraction of said indebtedness to the present time, every movement made by said bankrupt in relation to the collection of moneys and contraction of indebtedness, and the means adopted by him to avoid its payment and prevent its collection, has been skillfully planned and executed in fraud of his creditors, his wife and brother covering his said unjust and fraudulent transactions, and that he, the said bankrupt, now has in his hands, or under his control, or in the hands of others for his use and benefit, more than sufficient to pay all his indebtedness.

[I have had before me, as yet, but three cases of specifications in opposition to discharges under the act of 1867, and in all of them there has been these vague, and general, and insufficient, and fishing specifications. Such a practice is not to be encouraged; and although, in the present case, I shall give to the creditor ten days herefrom to file proper specifications, on the ground that the practice may not have been regarded as settled, yet it must be understood, that hereafter specifications must conform to the views expressed in this decision, and that the time for filing them will not hereafter be enlarged by the court, after the expiration of the time granted by or under general order No. 24, for doing so.] [2]

BLATCHFORD, District Judge. In this case, the creditor has, under the leave granted to him by the court, filed further specifications of the grounds of his opposition to the discharge of the bankrupt.

1. So much of the first specification as

_____
[2] [From 1 N. B. R. 294 (Quarto, 50).]

avers that the original indebtedness of the bankrupt to the creditor was created through the false and fraudulent representations of the bankrupt, is merely an averment that the debt was created by the fraud of the bankrupt. As such, the debt would, under section thirty-three of the act, not be discharged by a discharge of the bankrupt. The fraudulent contracting of a debt is not made, by section twenty-nine, a ground for refusing a discharge, and probably for the reason that such debt will not be affected by the discharge. Besides, if the discharge could be refused because the debt was created through the fraudulent representations of the bankrupt,. the nature, and character, and time, and place, and circumstances of the representations must be specified, and the particulars wherein they were false and fraudulent must be set forth; otherwise, the specification is not available for any purpose.

So far as the first specification avers that there is a false statement in Schedule A, No. 3, to the bankrupt's petition, it is insufficient, because it does not aver that such statement was "willfully" false. Section twenty-nine requires that false swearing in a petition, schedule, or inventory, should be "willfully" false.

2. The second and third specifications relate solely to transactions by the bankrupt under and in regard to an assignment made by him in 1854. They do not set forth any ground that is covered by section twenty-nine of the act.

3. The fourth specification is defective. It merely avers that a certain statement in Schedule A, No. 3, to the petition is "untrue." It ought to aver it to be "willfully" untrue.

4. The fifth specification, so far as it avers that the statements in Schedule B, No. 1, annexed to the bankrupt's petition is untrue, is defective in not averring it to be willfully untrue.

The portion of the fifth specification which avers that the bankrupt is entitled to the two lots in Sixty-Third street, may be regarded as a sufficient specification to show that the bankrupt has been guilty, under section twenty-nine, of negligence in delivering to the assignee property belonging to him at the time of presenting his petition and inventory. Schedule B, No. 1, sets forth that the bankrupt has no real property, and it is to be assumed that he has delivered none to the assignee.

So much of the fifth specification as avers that the bankrupt is entitled to "other real estate" is too vague and general to be triable.

5. The sixth specification is defective. It avers that the bankrupt falsely testified, in respect to a certain matter, on an examination in this matter before the register, but it does not aver that the bankrupt willfully swore falsely on such examination in respect to such matter, nor does it aver that the fact in regard to which the false testimony was given was a "material fact," as is required by section twenty-nine.

6. The seventh specification is sufficient. It avers in substance willful false swearing by the bankrupt in Schedule B, No. 3, to his petition, in swearing that he had no choses in action. Whether the fact, that the bankrupt owned a life insurance policy on his own life, and did not set it forth among his assets, is to affect his discharge, is a question which will be disposed of hereafter.

7. The eighth specification I hold to be sufficient, as being, in substance, an averment of negligence in the delivery by the bankrupt to the assignee of property belonging to him at the time of the presentation of his petition.

8. The ninth and tenth specifications are altogether too vague and general.

The result is, that the portion of the fifth specification particularly mentioned above, and the seventh and eighth specifications, are triable.

If either party desires to take further testimony in regard to them, a reference will be made to Register Ketchum to take such testimony and report it to the court.

[NOTE. Subsequently this cause came up for trial on the fifth, seventh, and eighth specifications. The court held that the eighth specification brought the case within grounds for withholding a discharge. A discharge was consequently refused. Case No. 11,583. The case was afterwards referred back to the register for further testimony, and the case was then heard on the whole testimony. The discharge was refused. Id. 11,581.]