## Case No. 13,167.

### In re SOLOMON.

[2 N. B. R. 285 (Quarto, 94);[1] 6 Phila. 481; 25 Leg. Int. 364; 1 Chi. Leg. News, 77, 107.]

District Court, E. D. Pennsylvania. 1868.

BANKRUPTCY—OMISSION TO KEEP BOOKS—INTENT —DISCHARGE.

The provision of the bankrupt law of 2d March, 1867 [14 Stat. 517]. that no discharge shall be granted if the bankrupt, being a merchant or tradesman, has not, subsequently to the passage of the act, kept proper books of account. applies whether the omission to keep them has been with fraudulent intent or not.

[Cited in Re Jorey, Case No. 7,530; Re Gay, Id. 5,279; Re Bellis, Id. 1,275; Re Brockway, Id. 1,917; Re Archenbrown, Id. 505; Re Frey, 9 Fed. 379, 384; Re Graves, 24 Fed. 554.]

[Cited in Re Good, 78 Cal. 402, 20 Pac. 861. Cited in brief in Re Howard, 59 Vt. 595, 10 Atl. 719.]

In bankruptcy.

Before CADWALADER, District Judge, assisted by GRIER, Circuit Justice.

The bankrupt was a furrier, whose purchases were few and of small amount. They had mostly been made in bulk. After working up the materials purchased, he had sold a portion of the produce of his manufacture at auction, and had sold a greater portion by retail, in a store of his own. The invoices or bills of his purchases, and the vouchers or memoranda of his payments, had been filed in regular order of time, and preserved with the

---

[1] [Reprinted from 2 N. B. R. 285 (Quarto, 94), by permission.]

auctioneer's accounts of sales. The bankrupt had an account in a bank, where his book had been settled; and he had preserved the bankbook and the paid checks, but had kept no check-book. Of the receipts in cash from the sales in his store, he had made a daily memorandum on a slate, but had from day to day rubbed out the previous day's entries. No other account of such receipts had been made. In this, and in some other cases, a question arose upon the effect of the provision of the twenty-ninth section of the act of congress of 2d March, 1867, that no discharge shall be granted if the bankrupt, being a merchant or tradesman, has not, subsequently to the passage of this act, kept proper books of account. The question was whether this enactment applied when the omission to keep them had not been with intent to defraud his creditors.

The district judge was of opinion that English decisions threw no light on the subject, because the words of the English statute were altogether different. He thought that in business of some kinds, any contemporaneous written memorials, formal or informal, of a tradesman's transactions, whether in a bound volume, or in detached sheets, might answer the definition of proper books of account, if they had been preserved, and so arranged as to present an intelligible and substantially complete exposition; but that the absence of such written memorials could not be excused merely because it had not occurred with a fraudulent intent. The judge observed that if such a qualification had been intended by congress, there was no reason to limit the provision to cases occurring after its enactment; that in the absence of proper books of account, it was ordinarily impossible to form a safe opinion whether the bankruptcy of a merchant or tradesman was fraudulent or not; that the enactment was therefore founded in motives of commercial policy; that it was in substance a repetition of a like provision of the act of 1841 [5 Stat. 440]; and that, in the act of 1867, the omission of words, like those of the British act, was doubtless intentional. But, as it was, perhaps, questionable whether there could be an appeal from such a decision, he said that he would ask the circuit judge to sit with him on a re-argument of the question. It was accordingly argued before both judges.

Mr. Kimball, for the bankrupt, did not dispute that he was a tradesman, but contended that he was, according to the intent of the act of congress, entitled to a discharge, although books had not been kept, unless the omission to keep them was fraudulent; and that even if this were not the meaning of the act, he should be discharged, because the true state of his business had been sufficiently exhibited, and the phrase "proper books of account," in the act, excluded the requirement of books beyond such as were necessary for this purpose, and impliedly dispensed altogether with books where they were altogether unnecessary for it, as in this case.

GRIER, Circuit Justice, after quoting the words of the enactment, said: The provisions of the bankrupt act of 1867, § 29 (14 Stat. 532), are that "no discharge shall be granted," if, inter alia, etc., "or if, being a merchant or tradesman, he has not, subsequently to the passage of the act, kept proper books of account." We cannot, by any latitude of construction, interpolate "with intent to defraud his creditors." It is the policy of this clause of the act, that after its passage every merchant or tradesman, should keep such "books of account," as, considering the business and condition of the debtor, would enable any competent person to determine from the books and invoices, &c., &c., the real condition of the debtor's affairs. It is not necessary that these books of accounts be kept according to the forms taught in the schools, or in ledgers and day-book, bound in leather. Could any competent person, from the invoices, bankbooks, checks, and other papers kept, without any cash accounts of receipts and expenditures, "determine the real condition of the debtor's affairs?" It seems to me that the question should be answered in the negative.

---

SOLOMON (ANDREWS v.). See Case No. 378.

SOLOMON (PAYNE v.). See Case No. 10,856.

SOLON, The (ANDERSON v.). See Case No. 303.

SOMBORN (APOLLINARIS BRUNNEN v.). See Case No. 496.