## Case No. 17,885.

### In re WINSOR.

[16 N. B. R. 152;[1] 9 Chi. Leg. News, 402; 2 Cin. Law Bul. 212.]

District Court, W. D. Michigan. Aug. 10, 1877.

BANKRUPT'S DISCHARGE—OMISSIONS FROM SCHEDULE—KEEPING BOOKS OF ACCOUNT.

1. If a bankrupt honestly regards a judgment held by him as worthless, he is not chargeable with false swearing or fraud if he omit it from his schedule. Even if it has value as an asset, and he considers it as having value, still its

---

[2] See Story, Ag. §§ 21, 62–68, and the authorities there cited.

[1] [Reprinted from 16 N. B. R. 152, by permission.]

omission must be intentional in order to charge him with false swearing or fraud.

2. A merchant or trader who, prior to his becoming such, has kept books of account showing the state of his affairs, is not required to carry their contents or any part of them into his books opened and kept as a trader, in order to satisfy the requirement of the statute as to a bankrupt keeping proper books of account while he is a merchant or tradesman.

3. Keeping proper books of account, within the meaning of the bankrupt act [of 1867 (14 Stat. 517)], is the keeping of an intelligent record of the merchant's or tradesman's affairs, and with that reasonable degree of accuracy and care which is to be expected from an intelligent man in that business, and a casual mistake therein will not prevent a discharge.

[Cited in Re Blumenthal, Case No. 1,575; Re Graves, 24 Fed. 554.]

4. It is not required that a chattel mortgage given to secure a debt shall be entered upon the merchant's or trader's books. An entry of notes upon the fly-leaf of the blotter is sufficient.

[In the matter of Zenas G. Winsor, a bankrupt.]

J. W. Champlin, for bankrupt.
Mr. Fletcher and Mr. Smiley, opposed.

WITHEY, District Judge. Fifteen grounds of opposition to the bankrupt's discharge are stated in the specifications of three opposing creditors, and cover all the grounds alleged by other creditors. It is necessary to notice but four in deciding the case, viz.: specifications 2, 3, 13 and 15. One and fourteen were abandoned, and three embraces in substance all that is alleged by four to twelve, inclusive.

The second specification alleges wilful and false swearing by the bankrupt in his oath to Schedule "D;" also wilful and fraudulent omission of an asset from the schedule. The evidence is, that one Butler, in 1868, obtained judgment in the state court against Jacob W. and Eugene E. Winsor, which in May, 1874, was assigned to the bankrupt. At the time of the bankruptcy, this judgment remained unsatisfied, and has not been scheduled as an asset. It also appears that Jacob W. Winsor died some time before the proceedings in bankruptcy were commenced, his estate being utterly insolvent. The other judgment debtor is irresponsible. The bankrupt testifies that the reason the judgment was not scheduled among his assets was because it never occurred to him to place it there. He seems to have considered it worthless and of no consequence before his bankruptcy. Eugene E. had entered into the obligation on which the judgment was recovered at the instance of the bankrupt, and on the understanding that he was to be saved harmless. The bankrupt did not consider that he had any just claim against Eugene, in view of that understanding.

The facts do not sustain the charge that the bankrupt took a wilful false oath, or that he fraudulently omitted the judgment from his schedule. If the bankrupt honestly regarded the judgment worthless, he might omit it from the schedule without being chargeable with false swearing or fraud. If it had value as an asset, and was considered by the bankrupt as having value, still there was neither a wilful false swearing nor fraud unless the omission to place the judgment in the schedule was intentional.

The third specification alleges that the bankrupt, being a merchant and tradesman, failed to keep proper books of account, in not having entered a debt owing to one of his children. Four other specifications allege the same thing as to four other children. The facts disclose that in 1865, the bankrupt held in trust land for his five children, which he sold for some fourteen thousand dollars and appropriated the money to his own use. This mis-appropriation occurred before the bankrupt engaged in trade. At the time of the sale of the land he entered the transaction in his then books of account. Six months or more before the petition in bankruptcy was filed, those books were destroyed by an accidental fire which consumed a building in which they were kept. When he went into trade in 1870 or 1871, the bankrupt opened books of accounts appertaining to his business as a trader, but did not transfer to them any of the transactions entered in the books of account which he had kept for fifteen years previously. The bankrupt law declares that "no discharge shall be granted, or, if granted, be valid, if, being a merchant or tradesman, he has not subsequent to the passage of this act, kept proper books of account." The question is, does this provision require the books of account kept by a trader as such, to contain entries of debts owed by him at the time he went into trade, previously contracted, as well as of those debts incurred in his business as a trader. The statute relates to the bankrupt while a merchant or trader, and, as we understand, visits upon him the penalty of being refused a discharge from his debts, if while a trader he did not keep proper books of account. The statute should be so construed as to carry out the intention of congress. A trader must be held to the utmost good faith in keeping his accounts, to the end that his assignee in bankruptcy or any competent person may be able from his books to ascertain the state of the bankrupt's business while a trader. But if, prior to becoming a trader, he kept books of account which exhibited the state of his affairs, their contents, nor any part of them, need not be carried into his books opened and kept as a trader in order to satisfy the provision of the statute as to a bankrupt keeping proper books of account during the time he is a merchant or a tradesman. The law requires no books of account to be kept by any one as a condition precedent to obtaining a discharge other than those who, being merchants or tradesmen, become bankrupt. Had the books kept by Winsor prior to his entering into trade not been destroyed

and they been turned over to the assignee, it is obvious that the ground of opposition we are considering could not successfully have been urged, and the accident that destroyed those books ought not, therefore, to be made the circumstance for visiting upon him the penalty of being denied a discharge. We find that specifications three to twelve inclusive are not sustained.

The thirteenth specification involves the same clause of the statute as that last considered, but is too indefinite to constitute a ground of opposition; nevertheless we will consider it. The charge is that the bankrupt did not enter in his books of account "a large real estate transaction with one E. P. Ferry." The evidence shows that the transaction complained of was entered on page 510 of the blotter kept by the bankrupt as a trader, fully disclosing his indebtedness in relation thereto. We might, therefore, without further comment, dispose of this specification. But in the course of the trial, by reference to the schedule of debts, it appeared that subsequent to the real estate transaction the bankrupt gave to Ferry two notes of two thousand five hundred dollars each to cover the indebtedness growing out of that transaction, and these notes were not entered in the books of account. The specification charges that the bankrupt "had large real estate transactions with one E. P. Ferry, of Grand Haven, Michigan, of which he kept no record in his books of account." Now, suppose, by a liberal construction, the subsequent giving of the notes should be considered as part of the "real estate transaction," and covered by the pleading, or assuming that the court is not to grant a discharge if it appears the bankrupt has not kept proper books of account, whether such omission is pleaded or not, what conclusion should be reached? The evidence shows that the bankrupt's books purported to contain an account of his bills payable. He testified that he had supposed, until his attention was called to the omission, his books did contain entries of all his bills payable, that his practice was to enter them in his books of account. Now, the mere fact that they were not entirely accurate, or that items of his business were occasionally omitted from his books, ought not, standing alone, to be regarded as evidence that he did not keep proper books of account within the meaning of the bankrupt law, unless "proper" means "accurate" books of account; and if the latter is to be the interpretation of the statute, we venture to assert there will thereafter be few if any discharges of bankrupt traders.

It was urged that intentions and good faith are not to be considered in determining whether proper books of account have been kept. Such is the rule to be applied when no account of cash, of merchandise, or stock, or bills payable, etc., has been kept, or when no intelligent account of any such matters has been kept. The bankrupt merchant or tradesman in such case is not entitled to a discharge, no matter what may have been his intention, as has been often held. On the other hand, when it appears that he has in some intelligent form or manner kept an account of those and other departments of his business; and yet is shown to have omitted one or more items from the accounts it then becomes a proper inquiry whether the omission was casual or intentional. Keeping proper books of account, within the meaning of the bankrupt act, may be said to be the keeping of an intelligent record of the merchant's or tradesman's business affairs, and with that reasonable degree of accuracy and care which is to be expected from an intelligent man in that business. An intentional omission, fraudulent within the scope of the bankrupt law, would be conclusive that proper books of account had not been kept; whereas, if the omission to make the proper entry was not designed but casual, it is manifest that no such conclusion would necessarily follow. If on the other hand there were repeated omissions, evincing gross carelessness or want of reasonable care, it might justly be held that the bankrupt had not kept proper books of account, for he should be held not only to the utmost good faith, but to the exercise of at least ordinary care in keeping his accounts.

We have been guided by such considerations whenever the question has been presented whether the bankrupt, merchant or tradesman, has kept proper books of account. No case has been cited by counsel, and we have not been able to find any, which considers the questions we have discussed. The primary consideration is whether the bankrupt has kept his accounts in such manner as to furnish an intelligent understanding of his affairs. If such has been the manner of keeping a record of his affairs, and yet mistakes are exhibited therein, it then becomes a proper subject of inquiry whether there is evinced reasonable care and an honest purpose to fully enter or keep proper accounts. If the court can answer these questions in the bankrupt's favor, he is, in our judgment, entitled to a discharge.

The fifteenth and last specification presents other objections to the bankrupt's book-keeping. They relate to several notes made by the bankrupt and endorsed by E. E. Winsor, discounted at the banking-house of M. V. Aldrich, in this city, the first one being for two thousand dollars, the others being renewals for such part of the original sum as from time to time remained unpaid. It is alleged that none of these notes were entered as bills payable. An examination of the books kept by the bankrupt shows that on a fly-leaf in the back part of his blotter these notes were all entered, except, possibly, the original note for two thousand dollars. The entries show the date, amount and time of payment, etc., in the form of memo-

randums; but afford all the information nec-
essary to advise any intelligent person of
the indebtedness evidenced by the notes.
There can be no doubt but this answers the
requirements of the law. The entry of the
last note given in renewals shows the in-
debtedness subsisting at the time of the
bankruptcy; those previously entered had
been canceled as paid. The court did not
personally inspect the book as to the two
thousand dollar note first given, but the at-
tention of the bankrupt having been called
as a witness to the fact whether it did there
appear, he examined and stated it was en-
tered and, as we understood, pointed out the
entry. We therefore find the notes to have
been entered in his books of account in such
manner as to satisfy the requirement of the
statute. It was further objected by this
specification that the bankrupt also failed
to keep proper books of account, in that he
gave to Eugene E. Winsor a chattel mort-
gage on a part of his personal property to in-
demnify him against any liability which Eu-
gene should thereafter incur on account of
the bankrupt in conducting as agent the
bankrupt's Grand Rapids branch of busi-
ness. As the mortgage was evidence of no
indebtedness and created no liability, but
was given as mere indemnity against a pos-
sible future liability of the mortgagee, we
entertain the opinion that there was no ob-
ligation on the part of the bankrupt to make
an entry in his books of account of the giv-
ing of such mortgage. When, subsequent to
the giving of the mortgage, Eugene became
liable as endorser or otherwise upon the
bankrupt's obligations, those obligations
were entered in the manner we have stated.
The mortgage, if it should come to have any
valid effect as- against creditors, would be-
come a matter of public record in the proper
clerk's office; it belonged to no account usu-
ally kept by merchants; it occasioned no in-
crease in the debtor or credit side of any
account, and all that could be entered would
have been a memorandum of its existence
and the purpose for which it was given.

Our conclusion is that the bankrupt is en-
titled to a discharge from his debts. A decree
will be entered in accordance with these views.