## *In re* GRAVES, a Bankrupt.

### (*District Court, N. D. New York.* June 27, 1885.)

1. BANKRUPTCY—OBJECTIONS TO DISCHARGE—FAILURE TO KEEP PROPER BOOKS —EVIDENCE—CASH-BOOK.

   Where the specification filed by creditors in opposition to a bankrupt's discharge is in the exact language of Rev. St. § 5110, it is too broad to sustain a finding withholding a discharge on the ground that the bankrupt's cash-book was kept upon an incorrect theory.

2. SAME—AMENDING SPECIFICATIONS.

   After issue has been joined on the specifications, and evidence taken, without an intimation that the allegations are insufficient, it is too late to permit an amendment of the specifications which would introduce an entirely new ground of objection and present a separate and distinct issue for the consideration of the court.

3. SAME—BOOKS, WHEN SUFFICIENT.

   Where a competent person, upon examination of the books and papers kept by a merchant, would be able to reach a substantially correct conclusion as to the state of the merchant's affairs, such books will be held sufficient.

4. SAME—MANNER OF KEEPING CASH-BOOK.

A merchant who did a retail business of $40 to $50 per diem kept a memorandum ledger, order-book, and so-called cash-book, in which he made no entries of the goods sold for cash during the day or any particular time, but arrived at the amount of his cash sales by subtracting what money he had on hand in the morning, or at the beginning of the period, from what money he had on hand at night, or at the end of the period. *Held* that, under the circumstances, this manner of keeping his cash-book would not prevent his obtaining his discharge as a bankrupt.

In Bankruptcy.

*George W. Adams*, for the bankrupt.

*Edgar P. Glass*, for the creditors.

COXE, J. One of the specifications filed by creditors in opposition to the bankrupt's discharge, and the only one now in question, is, *mutatis mutandis*, in the exact language of the statute, viz.: "That being a merchant and tradesman, he has not, subsequently to the passage of the bankrupt act, and its amendments, kept proper books of account." Rev. St. § 5110. To sustain this allegation evidence was adduced, some being given under objection, tending to show that the bankrupt did not keep his cash-book properly. The learned register to whom it was referred found with the creditors upon this issue. The matter is now before the court upon exceptions filed to his report. The main propositions to be determined are—*First*, can proof of irregularities and defects in the manner and system of keeping a certain book be given under the general language of the specifications? *Second*, are the irregularities disclosed by the testimony of a character sufficiently grave to warrant the withholding of a discharge?

The authorities appear to be numerous and uniform that, under a broad, indefinite allegation, like the present, the creditor may prove that the bankrupt kept no books at all, or that he failed to keep any one of the books necessary for the transaction of the business in question. Having failed in this, however, he cannot enter into an examination of the books themselves for the purpose of showing that they were carelessly kept, or kept on a wrong principle. If such an issue is to be raised, the bankrupt must be advised of it by distinct, specific and definite statements in the pleading. In *Condict's Case*, 19 N. B. R. 142, the court says:

"It has been the uniform practice under the bankrupt act to consider all specifications as too vague and general which charge the offense in the words of the act. The particulars in which the bankrupt has offended should be so set forth that he may be apprised of the precise matters wherein he is alleged to have transgressed."

In *Frey's Case*, 9 FED REP. 376, the court says:

"The objection being, therefore, to the *manner* in which the books were kept, and to imperfections or omissions therein, general objections like those above stated are not sufficient. The particular irregularities or omissions must be pointed out in the specifications to entitle them to be considered. *In re Littlefield*, 3 N. B. R. 57; *Hammond* v. *Coolidge*, Id. 273." See, also,

*In re Smith,* 16 FED. REP. 465; *In re Butterfield,* 14 N. B. R. 147; *In re Rathbone,* 2 Ben. 138; *In re Eidom,* 3 N. B. R. 106; *In re Burk,* Id. 296, 300; Bump, Bankr. (9th Ed.) 279.

But it is said that it is now too late to urge this objection; that the bankrupt should have demurred, or he should have moved to strike out, or to have the specifications made more definite and certain. The short answer is that none of those remedies would have proved availing. The specification was well drawn; under it proof could be given that no books were kept, or that no cash-book, for instance, was kept. *Non constat,* this was the very omission which the creditors intended to allege, and expected to prove. It is obvious that the bankrupt had no other remedy except to confine the proof to the pleadings. The register had no power to pass upon any of the objections interposed by the bankrupt, and he did not assume to do so. General Order No. 10; Bump, Bankr. (9th Ed.) 198, 644; *In re Levy,* 1 N. B. R. 136; *In re Patterson,* Id. 147; *In re Mawson,* Id. 265; *In re Puffer,* 2 N. B. R. 43; *In re Bond,* 3 N. B. R. 7.

The question, therefore, is now to be determined by the court; and, within the authorities cited, it must be held that the language of the specification is too broad to sustain a finding withholding a discharge on the ground that the bankrupt's cash-book was kept upon an incorrect theory. It is suggested by the creditors that an amendment should be allowed, but the court is referred to no case in which such a radical amendment has been permitted, after the cause has been argued and submitted. The specifications were filed in 1876, issue was joined, and the evidence taken, without an intimation that the allegations were insufficient, and the court, at this late day, would hardly be justified in permitting an amendment which introduces an entirely new ground of objection, and presents a separate and distinct issue for the consideration of the court. *In re Smith,* 16 FED. REP. 465. But, upon the merits, it is thought that the discharge should not be withheld. The counsel for the creditors fairly and accurately states the matter in controversy, as follows·

"The books kept by the bankrupt * * * were a memorandum ledger, order-book, and what he calls 'a cash-book.' That these books, if they had been properly kept, were 'proper books of account,' within the meaning of the statute, I do not question; but what I do urgently contend for in behalf of the opposing creditors is that the manner in which he kept his so-called 'cash-book,' according to his own testimony, precludes it from being treated as a 'cash account' within the meaning of any of the decisions cited by the bankrupt's counsel, and from being considered a 'proper' book of account. The manner in which the bankrupt kept his cash-book, * * * briefly stated, * * * was by taking the 'amount of cash on hand in the morning from the amount on hand at night.' In other words, he adopted no means of keeping track of how many goods he sold for cash during the day or month, or whatever time he did pretend to balance his cash account, but arrived at the amount of his cash sales by subtracting what money he had on hand in the morning, or at the beginning of the period, from what money he had on hand at night, or at the end of the period."

If the bankrupt had been doing a large business, requiring the employment of an army of employes, where vast sums of money are daily received and disbursed, it may be conceded at the outset that the system above described would be wholly inadequate. But such was not the case. He was a small retail dealer, receiving between $40 and $50 per day. He employed but one clerk. The whole business was transacted directly under his eye. It was hardly possible that he could have been deceived or cheated. At the close of the day, in a business so small, his memory would doubtless have recalled all the transactions of any magnitude, for they must have been few. It is said that he should have noted every item of cash received, no matter how infinitesimal. It is not pretended that he was required to enter the name of the customer or the article sold, but simply the amounts of cash received. How such a system, in a business so modest in its dimensions, could materially aid the investigator is not explained, and it is not easy to perceive. To a dishonest man this system offered the same opportunities for fraud as the other; to an honest man its advantages over the one adopted are not entirely obvious. It would furnish an additional check, it is true; but without it the merchant's present condition could at any time be ascertained, mistakes of any magnitude corrected, and fraud discovered. It is not intended to say anything in approval of the system of keeping his cash-book adopted by this bankrupt; it may, undoubtedly, as an abstract proposition, be denounced as unwise and defective. But we are dealing here with strict statutory rights. No fraud or dishonesty is charged, and it would seem not to be the policy of the courts to keep a young man under the harrow for years, when the only accusation against him is that he failed to insert in his cash-book the items of his daily sales. Congress has not attempted to prescribe any particular system or principle of book-keeping. If a competent person, upon an examination of the books and papers kept by the merchant, is able to reach a substantially correct conclusion as to the state of a merchant's affairs, it is enough. The accounts may, where the business is small, be found in one book or in 20 books; the system may be double entry or single entry,—the form and manner in which the books are kept is unimportant so long as the true financial condition of the merchant or tradesman is shown. In the case of *In re Marsh*, 19 N. B. R. 297, the specification alleged that no cash-book had been kept by the bankrupts. The court says:

"The grounds are confined to whether they kept proper books in respect to the receipt and payment of cash. What would be proper in this behalf must depend upon the nature of the business, and the mode in which it was conducted. They bought hemlock bark and lumber, each taking charge of each branch, and forwarded it to customers by public conveyance. They kept bank accounts showing what money each received, and each kept a book professing to show what amounts, and to whom, each paid. * * * The statute requires that they (the books) should be proper, that is, for their purpose, which includes being honest; but does not go so far as to require that books

shall show where losses occurred, or how. The same provision was in the act of 1841 and in the English statutes, and was construed as requiring that the books should not, in what they showed or failed to show, be fraudulent."

In *Townsend's Case,* 2 FED. REP. 559, the court, at page 565, says:

"The degree of accuracy and particularity required will depend, in a great degree, on the circumstances of each case. Books which show an honest attempt to throw such light on his business transactions as will make them reasonably plain of themselves, or capable of being made plain by explanation, are sufficient, within the meaning and intention of the bankrupt law."

In *Antisdel's Case,* 18 N. B. R. 289, it was held that—

"The requirement that the bankrupt shall keep proper books of account is satisfied, if his creditors can gather from them a correct understanding of his business and financial condition."

In *Winsor's Case,* 16 N. B. R. 152, the court held that—

"Keeping proper books of account, within the meaning of the bankrupt act, is the keeping of an intelligent record of the merchant's or tradesman's affairs, and with that reasonable degree of accuracy and care which is to be expected from an intelligent man in that business, and a casual mistake therein will not prevent a discharge."

See, also, as bearing upon the question involved, *In re Frey, supra; In re Smith, supra; In re Jewett,* 3 FED. REP. 503; *In re Reed,* 12 N. B. R. 390; *In re Archenbrown,* Id. 17; *In re George,* 1 Low. Dec. 409; *In re Brockway,* 12 FED. REP. 69; *In re Solomon,* 2 N. B. R. 285.

It is thought, therefore, that the cash-book of the bankrupt, though imperfect, inartistic, and inaccurate, in a strictly commercial sense, was not, within the cases cited, so improperly kept as to justify the court in withholding the discharge. Discharge granted.