## The Steam-Ship Zodiac.

*(District Court, S. D. New York.   January 3, 1881.)*

1. COLLISION—FINAL DECREE IN REM—STIPULATION FOR VALUE—DE-
   CREE IN PERSONAM AGAINST CLAIMANT NOT SIGNING—ELEVENTH
   AND FIFTEENTH ADMIRALTY RULES.

   Where one of two part owners, who appeared as claimants by differ-
   ent proctors, a libel *in rem* for collision having been filed, executed a
   stipulation for value, with sureties approved by the libellants, for the
   release of the vessel, and conditioned to pay the amount that might
   be awarded on final decree on notice thereof to its proctors, and the
   other claimant did not unite in the stipulation, and a final decree for
   damages was thereafter rendered, and the libellants, being unable to
   collect their decree from the claimant (stipulator) or his sureties, moved
   that execution issue against the other claimant:

   *Held,* that the appearance of the other claimant as part owner of
   the vessel was not an admission of such ownership at the time of the
   collision, or of personal responsibility for the negligence of those then
   in charge of her.

   That to permit an amendment in effect making the suit *in rem* a suit.
   *in personam,* would be a clear violation of the fifteenth admiralty rule,
   forbidding the joinder of a claim *in rem* with one *in personam* in the
   same suit for collision.

   That the libellants, if they have any claim for damages against the
   owners personally, must resort to another suit *in personam* to enforce
   it; and the libellant's motion must be denied.

   Also *held,* the contents of the stipulation and its approval show-

ing a clear intent by the libellants to treat the claimant who signed it as the only one for that purpose, that they cannot now have the same relief against the other claimant, under the eleventh admiralty rule, as if he had signed it.

In Admiralty.

*Edward L. Owen*, for libellant.

*John Sherwood*, for Raymond.

CHOATE, D. J. This is a suit *in rem* for collision, which has resulted in a final decree for $1,153.90 damages. The libel having been filed, the New York & Newbern Steam-ship Company appeared as claimant and part owner, and afterwards answered, alleging itself to be the owner of sixty-two one-hundredths. One Raymond also appeared and filed a claim as owner of thirty-two one-hundredths, and afterwards answered. The arrest of the vessel was waived, her value, for the purpose of the suit, was fixed at $20,000 by consent, and a stipulation for value was given which recites the filing of the libel, the waiver of service of process upon the New York & Newbern Steam-ship Company's appearing, filing claim, and executing stipulation for costs and value; recites also that the company had filed a claim, and that the parties to the stipulation agree that, in case of default or contumacy on the part of the claimants or their sureties, execution for the agreed value, with interest, might issue against their goods, chattels, and lands. The condition of the stipulation was that "if the stipulators undersigned shall at any time, upon the interlocutory or final order or decree, etc., and upon notice of such order or decree to Sherwood & Howland, proctors for the claimants of said steam-ship, abide by and pay the money awarded by the final decree," etc., then the stipulation is to be void, etc. The stipulation was signed by the New York & Newbern Steam-ship Company, D. Colden Murray, and J. O. Fowler. Upon it is indorsed an approval as to form, amount, and sufficiency of sureties, signed by libellant's proctors.

The libellant being unable to collect his decree from the corporation and the persons who signed the stipulation, against whom execution issued, and the decree being wholly unsatis-

fied, now moves that execution issue against Raymond. The motion is based on two grounds: *First,* that Raymond, by appearing as part owner and defending the suit, is personally bound by the decree, and that, therefore, he is liable for the damages either in a suit *in personam* to execute the decree, or directly in this suit by the issue of execution against him; and, *secondly,* because he was bound under the eleventh admiralty rule to join in the stipulation and should be treated as if he had done so, and his failure to join in it should not enure to the benefit of the libellant.

It is undoubtedly true that a libel *in personam* will, in some cases, lie to enforce a decree *in rem.* *Penhallon* v. *Doane's Adm'r,* 3 Dal. 54. It is also unquestionable that Raymond is concluded by the decree as to all matters put in issue and determined thereby, but the relief now asked must rest upon his personal liability as owner for the damages caused by the collision, which he is estopped by the record from disputing to have resulted from the fault of those in charge of the Zodiac, as adjudged. It seems also to be the practice of the admiralty courts in some cases, in suits *in rem,* where the record shows a clear right to recover *in personam* against one who has appeared and contested the suit, to allow the libellant to proceed to a decree *in personam.* Thus, Judge Betts, in his work on Admiralty Practice, says, (page 99:) "The practice of this court is not to render a decree *in personam* on a libel *in rem,* but, if the case proved shows a clear right to a recovery against the person, (whether the action *in rem* is sustainable or not,) the libellant will be permitted after decree to introduce the proper allegations *in personam,* and proceed thereon. Care will, however, be taken that no surprise or advantage is allowed against the defendant by means of such change of the direction of the action. Full notice must be given to him of the change of proceedings, and although his appearance in the action *in rem* places him so within the jurisdiction of the court as to authorize it to mould the action conformably to the justice of the case, his stipulators will not be bound for any act or proceeding out of the suit *in rem.* So, also, if the defendant does not appear to answer or contest

the action in its direction *in personam*, like proceedings must be taken to bring home notice to him, as on an original institution of a suit. After such steps have been taken, the court will hear and adjudicate the matter upon the proofs already before it, or upon the hearing of such further evidence as either party may be allowed, on motion or petition, to introduce." This passage is cited with approval by Mr. Benedict, —Ben. Adm. (2d Ed.) 547,—and the practice referred to is approved by Judge Curtis in *The Enterprise*, 2 Cur. C. C. 319. The relief asked in this case is virtually to treat the decree as a decree *in personam* against Raymond, or, by an amendment of the decree, if that be necessary, to make it a decree *in personam* against him on which execution may issue. There are, I think, two obvious and insuperable objections to this— *First*, that the record does not clearly show that Raymond is personally liable for the damages recovered; and, *secondly*, if the record did show that, still the admiralty rules forbid the prosecution of a claim for collision *in rem* against the vessel and *in personam* against the owner in the same suit. As to the first objection, the fact that, when a vessel is sued for damages by collision, a person appears and defends as owner, is merely an admission that he is the owner at the time of her arrest, and is no admission that he was the owner at the time of the collision, or in any way responsible personally for the acts or negligence of those in charge of her at the time of the collision. Consistently with the record, they may not have been his agents or servants. It is unnecessary, therefore, to consider whether, consistently with the act limiting the liability of ship-owners, the decree *in rem* can be taken to be conclusive as to a personal liability against the owners at the time of the collision. As to the second objection, the admiralty rules prescribed by the supreme court are imperative with respect to what modes of relief may be sought in one suit, and to permit now an amendment which will make the suit one *in rem* and *in personam* as effectually as if the suit had been begun in this form, would be a clear violation of those rules. Adm. Rule 15. See, also, *The Sabine*, 101 U. S. 384.

The passage above quoted from Betts' Admiralty shows clearly that it is only by amending the pleadings and decree that such relief as is now asked can be given, and none of the authorities cited by the libellant's counsel conflict with this view. If, then, the libellant still has a claim for these damages against the owners personally, he must resort to another suit to enforce it. That was the suggestion of Mr. Justice Curtis in a similar case. *The Enterprise, ut supra.*

The other ground on which the relief is asked, that Raymond should have signed the stipulation, is sufficiently answered by the recitals and form of the stipulation itself, and its approval by the libellant's proctors. It appears very clearly from the stipulation that the libellant understood and consented to the New York & Newbern Steam-ship Company, and it alone, being treated as claimant for the purpose of the bonding and delivery of the vessel on bail. Raymond was not treated as a claimant to whom the vessel was to be delivered. He appeared, not by the proctors named in the stipulation as claimant's proctor, but by another proctor. The reason why the corporation alone was thus treated as claimant who was to take possession of the vessel when released on bail, may have been because it was the owner of a majority interest. But, whatever may have been the reason, the libellant consented to the giving of the stipulation in the form in which it was given, and cannot now complain that Raymond did not join in it. The omission to have Raymond join appears to have been intentional. There is no evidence of mistake which would justify a reformation of the contract, and nothing in the eleventh admiralty rule which would justify the court in treating Raymond as a stipulator, or in now directing that he join in the stipulation.

Motion denied.