In re GLASS.

(District Court, W. D. Tennessee. July 26, 1902.)

1. BANKRUPTCY—SPECIFICATIONS—OPPOSING DISCHARGE—AMENDMENT.

Specifications opposing a bankrupt's discharge, though entirely defective, may be amended at the discretion of the court.

2. SAME—SIGNATURE.

Specifications opposing a petition for a bankrupt's discharge (form No. 58) must be signed and sworn to by the opposing creditor, and, if there be more than one creditor, by each opposing creditor, and not alone by the attorney or counsel.

3. SAME—VERIFICATION.

The verification to specifications opposing a petition for a bankrupt's discharge must be in the form prescribed by the creditor's petition (form No. 3), to wit, that the creditor hereby makes solemn oath that the

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 716.

statement contained in the foregoing specification of grounds of opposition to the bankrupt's discharge subscribed by him (or them) are true.

**4. SAME—SIGNATURE BY CORPORATION.**

Where the creditor opposing a bankrupt's discharge is a corporation, the signature to the specifications must be in the form prescribed by the supreme court under Bankr. Act 1867 for the petition of a corporation (form No. 3), to wit: "In witness whereof I have hereunto subscribed my name as president (or other officer or agent) of said corporation and affixed the seal of the same this ——— day of ———,"—followed by the signature of the officer and seal of the corporation.

**5. SAME—SIGNATURE AND VERIFICATION BY PARTNERSHIP.**

Where the opposing creditor to a bankrupt's discharge is a partnership, the verification and signature of the firm to the specifications may be made by one of the partners authorized to sign the firm name.

**6. SAME—VERIFICATION BY ATTORNEYS OR AGENTS.**

Specifications in opposition to a bankrupt's discharge cannot be verified by the oaths of attorneys or solicitors or other agents, in the absence of a previous order of court allowing the same, in which event both the order and the oath should state the reasons therefor.

In Bankruptcy. On demurrer to specifications opposing bankrupt's discharge.

Frank P. Smith, for bankrupt.

Collier & Collier and Thomas M. Scruggs, for creditors.

HAMMOND, J. It is admitted by counsel that the specifications are not in proper form, and leave is asked to amend them. Objection is made that there is nothing by which to amend, the specifications being so entirely defective. There was an old doctrine that amendments could be made only where a good cause of action was defectively stated; but in modern practice, and especially under our liberal federal statutes of amendment, an entirely new cause of action may be stated in a pleading by way of amendment; and there are some very radical and startling rulings to that effect. Some decisions are against this, particularly where the bar of the statute of limitations is involved, or some like effect is the result of allowing the substitution of a new ground of action. Still the modern rule is that of great liberality in quite all cases, and it seems to me that, if the bankrupt has been guilty of any of the offenses for which his discharge may be opposed, the most liberal rule of amendment of the specifications should prevail, and that he should not be allowed to escape by the failure of the creditors to properly plead the grounds of opposition. The ordinary discretion of the court will protect the bankrupt against any injustice in the application of this liberality of amendment. His privilege of discharge from his debts is purely a matter of statutory grace, and not of any common right at all; and he should expect always to be denied a discharge unless he complies strictly with the conditions entitling him to that indulgence by refraining from any wrongdoing denounced by the statute as a bar to a discharge.

Here the specifications indicate that, if the facts be properly pleaded, there may be a bar. Not certainly so, and it may in the end turn out to be only a fraud upon creditors not made a ground for opposing the discharge; but it may be otherwise, and the averments

are not so entirely destitute of all merit as to invoke even the old rule of amendment relied on by the bankrupt's counsel. Rev. St. § 954; 1 Enc. Pl. & Prac. 462, 472; Tilton v. Cofield, 93 U. S. 163, 166, 23 L. Ed. 858; Tiernan v. Woodruff, 5 McLean, 135, Fed. Cas. No. 14,027; Bank v. Sherman, 101 U. S. 403, 405, 406, 25 L. Ed. 866; Hunter v. U. S., 5 Pet. 173, 182, 8 L. Ed. 86; Eberly v. Moore, 24 How. 147, 158, 16 L. Ed. 612; Richmond v. Irons, 121 U. S. 27, 43, 47, 7 Sup. Ct. 788, 30 L. Ed. 864; Graffam v. Burgess, 117 U. S. 180, 195, 6 Sup. Ct. 686, 29 L. Ed. 839; Shields v. Barrow, 17 How. 130, 144, 145, 15 L. Ed. 158; Smith v. Woolfolk, 115 U. S. 143, 148, 5 Sup. Ct. 1177, 29 L. Ed. 357; Hardin v. Boyd, 113 U. S. 756, 764, 5 Sup. Ct. 771, 28 L. Ed. 1141. Under the act of 1867 such amendments of the specifications were allowed with liberality. Bump, Bankr. (9th Ed.) 281, 719; In re Hill, 2 Ben. 136, 1 N. B. R. 275, Fed. Cas. No. 6,482; In re Rathbone, 2 Ben. 138, 1 N. B. R. 294, Fed. Cas. No. 11,580 (where Judge Blatchford allowed them and enlarged the time on the distinct ground that the practice had not become settled); In re Burk, Deady, 425, 3 N. B. R. 296, Fed. Cas. No. 2,156; In re Long, 3 N. B. R. 66, Fed. Cas. No. 8,477; In re Bellis, 4 Ben. 53, 3 N. B. R. 496, Fed. Cas. No. 1,275. But not after issue joined, proofs closed, and case argued. In re Smith (D. C.) 16 Fed. 465, 467; In re Graves (D. C.) 24 Fed. 550. The discretion of the court is always available to prevent injustice to the bankrupt in the matter of these amendments. Ubique supra. The practice as to amendments under the existing bankruptcy statute of 1898 is just as liberal as under the former act and in other courts. They were allowed by this court in the first case coming before it. In re Hirsch (D. C.) 96 Fed. 468, 471, 2 Am. Bankr. R. 715, 718; In re Holman (D. C.) 92 Fed. 512, 1 Am. Bankr. R. 600, 605; In re Hixon (D. C.) 93 Fed. 440, 1 Am. Bankr. R. 610; In re Morgan (D. C.) 101 Fed. 982, 4 Am. Bankr. R. 402; In re Frice (D. C.) 96 Fed. 611, 2 Am. Bankr. R. 674; In re Kaiser (D. C.) 99 Fed. 689, 3 Am. Bankr. R. 767; In re Mudd (D. C.) 105 Fed. 348, 5 Am. Bankr. R. 242 (in which Judge Phillips denied an application to amend the specifications, and states the considerations that should induce such a denial). The doctrine of amendments in the admiralty courts is just as broad, and liberality in their allowance is commended by the highest authority. The Zodiac (D. C.) 5 Fed. 220, 222; 1 Enc. Pl. & Prac. 256. And even in criminal cases, where the statutes of amendment have the least effect, the practice is not destitute of all power of amendment. Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849; 1 Enc. Pl. & Prac. 688. Thus we can see that to every court the statute of amendments (Rev. St. § 954) grants the fullest power and discretion. The bankruptcy statute being very liberal to the debtor in the matter of his discharge, confining the grounds of opposition to conduct on his part of a criminal nature or a quasi criminal carelessness and negligence, he should not be allowed to receive the acquittance of the statute because of any embarrassment or obstructions encountered by his creditors in presenting their opposition to his application for it. Only negligence of a culpable character on their part should debar them from the benefit of Rev. St. § 954, as to amendment of their specifications; and these,

it seems to me, are the considerations that should control the court in the exercise of its discretion in the premises.

Important questions of practice are made about the verifications of the specifications, which are conceded also to be defective; but it is complained that we have no rules of practice in this district regulating these details, and in this and other cases the necessity for verification of the specifications in opposition to discharge has been denied. One of the learned counsel for creditors insisted in the beginning that they do not require verification, and that they might be signed by counsel, and filed without it; but that, if they do require verification, he would not undertake, as an attorney, to verify them. He pointed to the fact, however, that .orms Nos. 57 and 58 and general orders 31 and 32 do not prescribe any form of verification, while other forms do append it wherever it is required. But this is only a fortuitous circumstance, I think, and quite indeterminate. These forms naturally are fashioned on those under the act of 1867, which required verification only in those matters where it was specifically provided by that act, or where the supreme court, exercising its statutory power to make the rules of practice and forms, chose to demand it. I have gone over those forms, and compared them with the forms under the existing act. Generally, each verification appended to the old forms was required in terms by the statute of 1867, though sometimes this was not so, as in form No. 40, for the removal of an assignee, which prescribes verification without any direction of the statute (Bump, Bankr. [9th Ed.] 924); while form No. 52 of the act of 1898 exacts none for the removal of a trustee (Loveland, Bankr. 770). The precept for verification does not appear to have been uniformly guided by the statute in either set of these forms. However this may be, the command of the statute of 1898 is imperative that "all pleadings setting up matters of fact shall be verified by oath." Section 18c. The omission of the supreme court, therefore, to prescribe a verification for a petition for discharge on form No. 57 of 1898, or for the specifications in opposition thereto on form No. 58, cannot override this plain command of the statute, if either of them be a "pleading," and "sets up matters of fact." Under the act of 1867, there being no such requirement, a verification might be, and often was, pretermitted in contracting the forms of 1867. And it is apparent that the draftsman of the new forms of 1898 factitiously followed the forms of 1867 in the omission of a verification without noticing this distinction between the two statutes. Thus he made forms No. 57 and No. 58 of 1898 conform, in respect of this absence of a verification, to forms No. 51 and No. 53 of 1867. Bump, Bankr. (9th Ed.) 930, 932. But in the one case the statute permitted the omission, and in the other it does not. Therefore it does not appear that in prescribing these forms the supreme court in 1898 has deliberately ruled that the specifications in opposition to a discharge are not "a pleading," and do not require a verification, under section 18c. That the specifications do "set up matters of fact" is beyond dispute, and that they have the form and substance of "a pleading" is equally clear; which being so, the omission of a verification from the new forms is a mere inexactness of compliance with the statute by the

draftsman, and does not bind us here, because the supreme court has overlooked the blunder.

It having been suggested that section 18c occurs in a section mostly, if not exclusively, devoted to procedure on an involuntary petition, it is insisted that its direction in respect of the verification of pleadings should be confined to involuntary cases. But this argument, and the rule of statutory construction on which it is based, are without force when applied to such an obviously patchwork structure as the whole statute shows itself to be. Besides, it is not in fact a section entirely concerning involuntary cases, and is under a subtitle of very much larger scope,—"Courts and Procedure Therein." Again, neither the statute, the general orders, nor the forms make any distinction whatever between an application for discharge by a voluntary and one by an involuntary bankrupt. Nor do they suggest any distinction in the specifications in opposition thereto. Hence we are left confronted with the question whether they are "pleadings" in the sense of section 18c. This happens to be a voluntary case, but, if it were an involuntary case, precisely the same question would arise as to the verification being required by that section. Evidently it applies equally to both if it applies at all. There is a very narrow and technical sense in which the word "pleading" is confined both in law and equity practice to such formal written documents as the "declaration" or "bill," the "demurrer," the "plea" or "answer," a "disclaimer," and the like; but that is hardly the sense of this statute. Bouv. Dict. word "Pleadings." It has seemingly rather the broader meaning there given of "stating in logical and legal form the facts which constitute the plaintiff's cause of action or the defendant's ground of defense; it is the formal mode of alleging that on the record which constitutes the support or the defense of the party in evidence." Bouv. Dict. "Pleading in Civil Practice," citing 3 Term R. 159; Doug. 278; Com. Dig. "Pleader"; Bac. Abr. "Pleas and Pleading"; Cent. Dict. word "Pleading"; 1 Enc. Pl. & Prac. 654, citing and quoting Snelling v. Darrell, 17 Ga. 141, where the restricted and more general meanings are each aptly disclosed in relation to statutes authorizing amendments.

It is not necessary to go into any nice discriminations of the practice in law or equity as to whether or when "a petition" can or does become "a pleading," or when it is only a kind of extraneous statement for an outside purpose, and is dehors the technical record of the "pleadings." The bankruptcy practice is, in respect of this, sui generis. It is all done by "petition." It has no other formal statements except these and their concomitants, and in that relation the word "pleadings" of section 18c must mean "petitions," and can refer to nothing else but those statements which come within the definition above quoted of a civil pleading, and the ordinary understanding of the meaning of that word. Bouv. Dict. "Petition"; 16 Enc. Pl. & Prac. 500, 511; 1 Enc. Pl. & Prac. 655, 656. The bankrupt's "application for discharge" under section 14 is nothing more nor less than a "petition," and is so called in form No. 57. On the analogies of equity practice as to "petitions," those which are based wholly on the record, already made, and do not set up any extraneous

119 F.—33

facts outside of any statute, would not require verification; but, setting up such facts, they would require it. 16 Enc. Pl. & Prac. 517; 22 Enc. Pl. & Prac. 1023, 1024. A petition for discharge avers, inter alia, that the petitioner "has duly surrendered all his property." That is a fact outside the record, known possibly only to himself as to its truth; and so it would seem that both by the statute and according to the analogies it should be verified by his oath, although this form does not call for it. So, also, the "specification of grounds of opposition to bankrupt's discharge" (form 58) is either an "answer" to the bankrupt's petition for discharge, and therefore a "pleading," in almost any sense, even the most technical, or else it is an independent petition, though not such in its form, asking the court to deny to the bankrupt his discharge because of the matters of fact extraneous to the record set up therein as the grounds of the opposition; and in either case, by all the analogies of any practice, and by the very terms of the statute, it surely requires verification. I cannot conceive of any kind of "pleading" which so certainly demands a verification as this "specification in writing." It is to all intents and purposes, under the statute, a criminal charge, or quasi criminal at least; and, while not possessing all the elements or consequences of criminal information or indictment, it is of so grave a nature that, if any "pleading" in any suit or practice reasonably demands verification by oath, that does most of all. Criminal informations are verified by the oath of the prosecuting officer or otherwise (10 Enc. Pl. & Prac. 451); and criminal indictments are verified by the oaths of the grand jurors. There is nothing in the bankruptcy record of so grave a nature as this, and it goes to the bifurcated root of the whole bankruptcy proceeding; for, on the one hand, the purpose is to distribute his voluntarily or involuntarily surrendered assets, and, on the other, to compensate him by a discharge. The shadow of the penitentiary also falls on his side of the general suit, when such charges are made; wherefore the reason for the exaction of all verifications is on the side of requiring it to such specifications, it seems to me. It was not so much so under the act of 1867, perhaps, though it must be admitted that this reasoning would have required it under that act also; and it was not demanded either by the statute or by the supreme court in its general orders or forms. And this may be the reason why the act of 1898 is so broad in its terms as expressed in section 18c.

While the petition for discharge is founded on the original petition in bankruptcy, voluntary or involuntary, and the record built upon that foundation, it is, after all, quite an independent proceeding, as are the specifications in answer to it. This is apparent from the statute, the general orders, the forms, and the entire procedure relating to the discharge and opposition to it. For this reason, also, it comes within the motive of the law for demanding the verification of pleadings under oath, in civil practice, which charge fraud and the like against the respondent, and likewise pleading under oath in answer to such a charge. That guaranty of good faith is the general principle at the bottom of such requirements, either under code practice or the general law in pleadings where the exaction is made. For example,

in explaining what pleas in equity are to be put in under oath and what not, it is said that generally those require verification where it will be necessary "to establish their truth by evidence upon oath at the hearing" (2 Daniell, Ch. Prac. [1st Ed.] 211); for the principle is that the court will not permit a defendant to delay or evade the relief sought by the plaintiff "unless he will first pledge his oath to the truth (or at least to his belief of the truth) of the facts upon which he relies, in all cases where the facts are those of which the court does not take judicial notice." Id. 112. And that is recommended by the learned author as the test by which the practitioner is to determine whether a given plea should be sworn to or not. Id. And in this case that is an all-sufficient test, and sheds abundant light upon the meaning of section 18c of the bankruptcy statute. Again: "Under the rules of chancery pleading a plea of matters in pais must be sworn to, and it is held that the waiver of an answer under oath in a bill does not waive the oath to the plea. A plea of matter of record need not be filed under oath, such a plea being proved by the production of the record." 16 Enc. Pl. & Prac. 594; Equity Rules 31, 32. 4 Desty, Fed. Proc. (9th Ed.) 517, gives form of verification of such a plea. It is a general rule that all petitions should be verified by an affidavit "that the facts therein contained are true, as far as known to petitioner, and that those facts which he states as knowing from others he believes to be true." Bouv. Dict. "Petition." And again, a petition should be signed by the party presenting it, and, when the facts upon which the application is based are not immediately before the court, a petition must be verified by oath; and that is also the practice in regard to petitions generally. 16 Enc. Pl. & Prac. 517; Swan v. Newman, 3 Head, 288. So this reason for the oath, and this test of discrimination whether it is due or not, permeates the civil practice everywhere, regulated definitely, sometimes, by statute and the Codes, but in federal practice mostly by the general law, unless by statute in particular instances, as in this bankruptcy statute. As to the verification of a bill, see 1 Daniell, Ch. Prac. (1st Ed.) 503; Id. (5th Ed.) 311, note 7; Id. 312, 313, 392–395. If there be several parties, all must join. Id. 396. For the verification by a corporation, see Id. 394, note 4, 396; for a form of the oath, see Id. 394, note 4; Id. 392, note 4; and for a corporation, Id. 2171, note 1; Id. 2172, note 4; Equity Rule 24; Fost. Fed. Prac. (3d Ed.) § 87, p. 240; Bates, Fed. Eq. Prac. § 123; 22 Enc. Pl. & Prac. 1015–1052. As to answers, all must be sworn to, unless the court specifically directs otherwise, or the oath be waived, where that privilege exists; though the reasons for that practice are somewhat different from those given for the verification of bills, pleas, and petitions, at least so far as pure equity practice is concerned. Unlike bills, the signature to answers is by the party himself, and not by attorney or solicitor; and so is the verification by oath, unless, again, by special direction, the court shall permit the signature and oath to the answer to be taken verbally by commission, and received without signature and oath, or that they be made by an agent duly and formally authorized. 2 Daniell, Ch. Prac. (1st Ed.) 268, 286; Fost. Fed. Prac. (3d Ed.) § 151; Bates, Fed. Eq. Prac. §§ 337,

342 (where the form of signature and verification both by natural persons and corporations are given); 22 Enc. Pl. & Prac. 1022, 1024, 1035, 1041–1043; Equity Rule 59. These are believed to be quite all the analogies to guide us in determining the practice in bankruptcy cases where the general orders and forms do not specifically direct us. General Order 37; Equity Rule 90.

In the very beginning there was a rule made by this court that attorneys should not be allowed to verify by oath the pleadings and proceedings in bankruptcy practice. The foregoing authorities show conclusively that such is the general rule in all courts, unless it has been changed by statute, and there is no act of congress permitting it. Where there is no statute, the practice in equity—and it is the same in bankruptcy—is that, when a party had to sign the pleading (as, for instance, an answer in chancery), or when a party had to verify the pleading, the signing or verification had to be done personally, and could not be done by attorney, both as to natural persons and as to corporations. In extraordinary circumstances—as that the party was beyond seas, or was mentally or physically incapacitated, or where the facts were peculiarly within the knowledge of the attorney, or the like—the court could make a special order that the signature and oath might be made by an agent or attorney; but always the previous order must be had, and the form of verification and signature must set out the special facts as a reason for the departure from ordinary practice; and this rule was very strict. The reason for it is plain,—that the adversary party shall have the responsible person bound by his own act, so that he should not be able to repudiate it, and put the other to the proof of an express or implied authority in the attorney, who might have neither, and, in the absence of a statutory authority, would have neither, except where the preliminary order of the court before mentioned had provided against that absence of authority. If the adversary party should challenge by a suit for malicious prosecution or otherwise that which had been done, it would be unjust, obviously, that he should be confronted with this interjection of outside and conveniently available defenses arising out of a denial of the attorney's authority. It is a very convenient and easy-going practice to allow attorneys to swear for their clients, saves time often, and expense, is one to which attorneys may readily resort, and is tempting, in fact, for these reasons; particularly if the swearing for one's client may be done upon "information and belief" as of course. But it is none the less a loose and unwise practice, condemned by the courts quite generally, even where it has been authorized by statute. In Johnson v. Murray, 12 Lea, 109, 116, Chancellor Cooper uses these apt words:

"The difficulties in this case, it may be added, have grown out of the loose practice, which ought never to be sanctioned, of permitting an answer to be filed without the signature of parties. The practice is equally objectionable of permitting petitions to be filed, signed, and sworn to by agents and solicitors, instead of by the parties themselves. The chancellor must have allowed the first petition, purporting to be by May and wife, to be withdrawn because it was not authenticated by, and therefore not binding on, them. But for this very reason neither petition ought to have been received."

It will be observed that all the existing forms in bankruptcy require the signature of the party himself. It may be, as in that of the debtor's petition,—form No. 1,—that the attorney signs it also, but not in any one of them,—certainly not in the petition for discharge or the specifications in opposition, forms No. 57 and No. 58,—does the attorney sign alone. Indeed only to the three petitions, respectively, of the bankrupt, of a bankrupt partnership, and of creditors for an adjudication in bankruptcy,—forms Nos. 1, 2, and 3,—is any provision made, or any note of any signature of attorneys; and not in one is there any verification by the attorney, except in proofs of claims, specially authorized to be so verified. There can be no implied authority, therefore, from the act itself, the orders, or the forms, for any signature or verification by an attorney. There must be some special authority by the court in the particular case for extraordinary reasons recognized as sufficient by general law, if it can be done at all. 2 Daniell, Ch. Prac. (1st Ed.) 268,—where it is said that, even where there be a power of attorney, and an authority of the court to sign by attorney, it is preferable to take the answer without signature, rather than to have the attorney sign the name of a defendant, so strict is this rule requiring the party to sign for himself. 1 Daniell, Ch. Prac. (5th Ed.) 395, note; 16 Enc. Pl. & Prac. 517; 22 Enc. Pl. & Prac. 1022, 1041, 1043. And where an attorney is allowed to take the oath it is on a special form. Id.; 4 Desty, Fed. Proc. (9th Ed.) 517, 819, in removal petitions; Id. 326, in admiralty pleading. In Re Simonson (D. C.) 92 Fed. 904, 1 Am. Bankr. R. 197, it was held that a petition in involuntary bankruptcy could not be verified by the attorney, and that section 1 (9) did not authorize it to be so verified. And in Re Brumelkamp (D. C.) 2 Am. Bankr. R. 318, 95 Fed. 814, it was held that the verification could not be taken before one's own attorney, where he was at the same time a notary. And in Re Brown, 50 C. C. A. 118, 112 Fed. 49, 7 Am. Bankr. R. 252, in the circuit court of appeals, Fifth circuit, it was definitely held that the specification in opposition to a discharge is a pleading, and requires verification, under section 18c of the statute. And as to the necessity for a verification of certain forms in bankruptcy, and especially of the petition for discharge and the specifications in opposition, see 22 Enc. Pl. & Prac. 379, 382.

The precise form required for the verification of any pleading is not, by the general law and practice, uniformly settled, is often doubtful, and difficult to frame, and presents some interesting conflict of opinion. Let us examine a little closely some of the varieties of form found in the verifications prescribed in these bankruptcy forms of 1898. A simple jurat, "Sworn to and subscribed before me," is often prescribed, as in that for a denial of bankruptcy,—form No. 6, for example. That prescribed for a debtor's petition (form No. 1) and a partnership petition (form No. 2) is a very common form of verification, but one that has been judicially criticised as defective, at least when it is appended to a paper that does not in its very text definitely point out that which is stated of the party's own knowledge and that which is stated only upon his information, while that of the creditors' petition (form 3) is a positive affirmation on oath

that the facts stated therein "are true"; that being the most absolute form known to the law, like that to a plea of non est factum (14 Enc. Pl. & Prac. 590; 16 Enc. Pl. & Prac. 546); or to a plea in equity (4 Desty, Fed. Proc. [9th Ed.] 517). And noticeably the verifications to the debtor's schedules are bare declarations that each is "a statement," etc., "in accordance with the acts of congress," etc., which acts of congress seemingly do not in terms require either oath to be "a true" statement,—section 7 (8); section 29 (2),—as did the act of 1867 (Rev. St. § 5015); and under the act of 1867 a corporation petition was signed by the president or other officer or agent, who affixed the seal of the corporation, and the oath was to be "changed to correspond with the form of the petition" (form No. 3, Bump, Bankr. [9th Ed.] 894). And it may be worth remarking here that a too close copying of the forms of 1867 may have resulted in making nugatory the oaths of the bankrupt to his schedules if they be challenged on an indictment for perjury. In Re Brown, 50 C. C. A. 118, 112 Fed. 49, 7 Am. Bankr. R. 252, it was held that the form of verification for specifications in opposition to a discharge should be "positive and certain, not vague and argumentative," and that the verification should be "by positive oath to the existence of the facts relied on as grounds for the same." This was said of verifications by the creditors in a form which states that "I am informed on reliable information, and have good reason to believe, and do believe, that the allegations and statements contained in the foregoing opposition to discharge are true"; and also by an attorney to the same effect, only he set out in his oath the sources of his information; both being held insufficient; and this decision is by the court of appeals of the Fifth circuit.

The familiar form for the verification of a bill in equity when that is required in practice is by an appended affidavit the wording of which is suited to the fact that the text of the bill itself states distinctly that averment which is made of the pleader's own knowledge and that which is made upon his information. But not one of these bankruptcy forms does this, as will be seen by inspecting them. Yet the debtor's voluntary petition has prescribed for its verification the common form of an affidavit to a bill,—a form of oath which is discredited by the authorities when the pleading does not in its text make discrimination between statements of one's own knowledge and of one's information from others. 22 Enc. Pl. & Prac. 1021, 1022, citing Stirlen v. Neustadt, 50 Ill. App. 378, where it is said that under such a verification it can only be known "by probing the mind of the pleader," which statement is given on self-knowledge and which on information only. See, also, Fost. Fed. Prac. (3d Ed.) § 87, note 10. On the other hand, the creditor's involuntary petition has its verification in the absolute form of a plea in equity, namely, "that the statements subscribed by them are true." An analysis of the petition filed by creditors and a comparison of it with the debtor's own petition and the partnership petition show that the two latter state facts that naturally are within the petitioner's own knowledge; while the other states some facts that naturally are within self-knowledge, such as those relating to the nature of the creditors' claims, and oth-

ers that naturally, or generally, rather, would be derived from information, such as those relating to the acts of bankruptcy. And yet according to the form they must swear as positively to these last as to those stated of self-knowledge. As to the forms of verification generally, see 22 Enc. Pl. & Prac. 1022, 1041, 1043; 16 Enc. Pl. & Prac. 594; 4 Desty, Fed. Proc. (9th Ed.) 517, 819; Fost. Fed. Prac. (3d Ed.) §§ 87, 151; Bates, Fed. Eq. Prac. §§ 123, 337, 342; 2 Daniell, Ch. Prac. (1st Ed.) 270, 286; Id. (5th Ed.) 394, note; Id. 743, 2171, 2172. Certainly the framework language of specifications in opposition to a discharge would not naturally take the form of a bill in equity, but rather that of a criminal information or indictment; wherefore the verification of a bill would hardly adapt itself to such a pleading.

Now, then, when a nicely discriminating and sensitive conscience comes to scrutinize these oaths which it is to take, it is very natural that one with such a conscience should hesitate to swear that charges made on the information of others "are true." Naturally, one would prefer to swear that one "believes them to be true." But it may be that the pleading to which he is swearing does not, in its text, discriminate between actual knowledge and information. If it be specifications in opposition to a discharge, it would be very difficult to so frame it as to meet the wants of the tender conscience, and put it in that shape. Practically it cannot be done, if technically it would be good. Neither can the affidavit of verification itself be any more practically so framed. By order of the supreme court a petitioning creditor must swear that facts that he states in his petition (form 3) on the information of others "are true," and why should he not make the same oath when he comes to specify his grounds opposing the discharge, albeit the knowledge come from others? In the very nature of the case it is to be implied that the oath is upon information, or, at least, it may be the one way or the other; and he is entitled to salve his conscience with the palliating implication. He must so salve it in the creditors' petition; and at any bar, in a trial for perjury, say, his oath would be so understood, especially where it was compulsory; and let us hope that it would be so understood in any court of conscience and at the bar of the Almighty, when He shall come to judge all of us in mercy and in truth. Psalms, lxxxix. 14.

I sincerely sympathize with the sensitiveness of litigants on this subject, as the law has always done in framing these forms of verification by oath; and would be inclined to be satisfied that the statute would be met by that form of oath which the supreme court appends to the debtor's petition (form No. 1) and to the partnership petition (form No. 2), notwithstanding the sensible objection to it set forth by the courts in Illinois and elsewhere. The statute might not be as completely satisfied by those verifications, but sufficiently, nevertheless, as it is by the form appended to the creditors' petition (form No. 3), also by that court. But for the sake of precedent and uniformity of practice, if nothing else, until the supreme court itself shall prescribe the form of verification for the specifications in opposition to a discharge (form 58), I feel constrained to adopt in this

district the form sanctioned by our Brother Meek in a Texas district, and approved by the circuit court of appeals for that circuit, and we will follow the form of verification to a creditors' petition (form No. 3), which has been sanctioned by the supreme court for a pleading not less obnoxious to the sentiment of a scrupulous regard for one's oath. In re Brown, supra.

The result here is:

1. The specifications opposing a petition for discharge (form No. 58) must be signed by the opposing creditor as indicated in the form itself, and not alone by the attorney or counsel, and must be sworn to by him.

2. If there be more than one creditor joined in the specifications, all must so sign it, and all must swear to it.

3. The verification must be in the form prescribed by the creditor's petition (form No. 3), to wit:

"Do hereby make solemn oath that the statements contained in the foregoing specification of grounds of opposition to the bankrupt's discharge subscribed by me (or them) are true."

4. If the opposing creditor be a corporation, the signature to the specifications must be in form prescribed by the supreme court under the bankruptcy statute of 1867 for the petition of a corporation (form No. 3, Bump, Bankr. [9th Ed.] 894), to wit:

"In witness whereof, I have hereunto subscribed my name as president (or other officer or agent) of said corporation, and affixed the seal of the same, this ―― day of ―― A. D.
"[Seal of the Corporation.]                    (Signature of the Officer.)"

5. The oath of verification prescribed for other creditors as above set out must be made by the officer of the corporation, mutatis mutandis.

6. When the opposing creditor is a partnership, the signature of the firm name by one of the partners authorized to sign the firm name will be sufficient; as also the verification by him alone or another partner, if the facts be known to him and not the partner signing the pleading, the form of the oath stating the fact as it may be.

7. The attorneys or solicitors or other agents will not be allowed to take the oath to the verification, and the already existing rule of this prohibition as to all verifications in bankruptcy proceedings will be enforced, unless there be a previous order of the court allowing the oath to be taken by an attorney for reasons appearing in the order and on the face of the oath itself.

Ordered accordingly.